### RALPH D. WILCOX AND OTHERS v. CHARLES J. HEDWALL.[1]

December 18, 1931.

No. 28,533.

[1]Reported in 239 N. W. 763.

*Eugene N. Best, Best & Flanagan,* and *Boutelle, Bowen & Flanagan,* for appellants.

*Leonard, Street & Deinard,* for respondent.

Stone, J.

Plaintiffs, lessors, sue defendant, lessee, for arrears of rents and taxes under a 25-year ground lease. There was trial without a jury and decision for plaintiffs. Defendant's motion for a new trial was granted upon the sole ground of error of law in a ruling that defendant had waived his right to trial by jury. From that order plaintiffs appeal.

The action being for the recovery of money under a contract, it is necessarily conceded that, unless waived, defendant was entitled to a jury trial under art. 1, § 4, of the state constitution. The issue whether defendant had waived a jury trial arose in the main as one of fact. The case had first been called for trial by Judge Leary, but finally came on before and was tried by his colleague on the Hennepin county bench, Judge Waite. The latter heard counsel and made his own investigation into the nature and effect of a conference between them before Judge Leary when the case had first been called for trial before him as a court case. Judge Waite came to his own conclusions as to what counsel had said then, and the effect. Into such a question of fact and its solution by the trial judge we decline to inquire. No record was made of the proceedings

before Judge Leary. So, even were we inclined to do so, we could not review that phase of the case.

■ The alleged waiver being out of the way on the decision below, it was error to refuse defendant's demand for a jury trial. But that alone does not require another trial. We do not reverse for error without prejudice. Where the constitutional right of trial by jury is denied, doubtless there should be a new trial, with a jury, if there is any reasonable possibility of prejudice otherwise. But as soon as the facts of a case so far appear as to demonstrate that there can be but one result, as soon as it appears on the facts as formally admitted by the parties or established by their proof, not only which way judgment must go, but also just what it must be, there remains no further right to trial of any kind.

The law does not consciously indulge in futilities. So it is not considered that judgment ordered on demurrer, the pleadings, or a directed verdict is objectionable because the defeated litigant is thereby deprived of the privilege of submitting his case to a jury. That is because the case has gone far enough to show that he has no cause of action or defense properly triable by a jury. And it would do him no good merely to have a jury listen to his evidence where inevitably they would be instructed to render a general verdict against him.

The province of the jury is to determine issues of fact, that of the court to determine those of law. So as soon as it appears conclusively that a case can present no issue of fact, there remains nothing which either litigant is entitled as matter of constitutional right to submit to a jury. The application of that long established proposition is matter of ordinary, everyday, legal experience. For example, in Maki v. St. Luke's Hosp. Assn. 122 Minn. 444, 142 N. W. 705, there was a verdict for plaintiff. Defendant's motion for judgment notwithstanding was denied, but plaintiff's for a new trial was granted. On defendant's appeal we reversed and directed judgment on the verdict "on the ground that defendant was in fact entitled to prevail on the merits." And lately we have concluded that it was error without prejudice to instruct a jury in a felony

case that it was their duty, "as matter of law," to find the defendant guilty of an offense, his guilt of which had been established by his own admissions in open court. State v. Corey, 182 Minn. 48, 51, 233 N. W. 590.

It is not enough in such case to warrant the denial of a new trial, with a jury, that there has been one trial without a jury and that justice seems to have been done, or that the decision by judge or referee seems correct. St. P. & S. C. R. Co. v. Gardner, 19 Minn. 99 (132), 18 Am. R. 334 (where there was a fact issue). It is not enough that "we might be satisfied that a full and fair trial was had, and that full and ample justice had been done by the court in reference to the merits of the case." Shaw v. Kent, 11 Ind. 80, 83; Smith v. Swint, 8 Ga. App. 109, 68 S. E. 620.

■ If there had been presented any question of fact, defendant was entitled to have it decided by a jury. That right would remain however much we might approve the decision by the court. But we have concluded, not only that there is no determinative issue of fact, but also that the decision against defendant is inescapable as matter of law. Had there been a jury, it would have been the duty of the court to direct a verdict for plaintiffs. Or, had there been a verdict for defendant, it would have been the duty of the trial court, or of this court on appeal, to set it aside and order judgment notwithstanding against defendant. That being the case, defendant could not have been prejudiced by being deprived merely of an opportunity to adduce his evidence in the presence of a jury. That is all that the granting of his demand for a jury trial could have given him.

On the precise point no decision of our own has been cited. But we think it is ruled by such cases as Maki v. St. Luke's Hosp. Assn. 122 Minn. 444, 142 N. W. 705. See also Eagle v. Oldham, 116 Ark. 565, 566, 174 S. W. 1176, 1199, holding that a decree in equity will not be reversed although the case should have been tried at law "where, under the law and facts, the judgment, if rendered at law, must necessarily have been the same"; Hunt v. Boyce, 176 Ark. 303, 3 S. W. (2d) 342; Rattray v. Talcott, 124 Iowa, 398, 100 N. W. 36; and 4 C. J. 951, § 2931.

12

■ The case for defendant is put upon the proposition, not that the evidence shows a substitution by consent or agreement of plaintiffs of the successive assignees in place of defendant, but that the record does present a fact question whether there has been such a substitution. We cannot agree nor escape the conclusion that another trial, with or without a jury, would be but an expensive futility.

The lease was for a term of 25 years from March 1, 1916, of a corner lot property carrying a one-story building, occupied by several subtenants. The annual rental, $1,500 for the first five years, $1,800 for the next five, and $2,500 for the last 15, was payable quarterly on the first days of March, June, September, and December. Defendant, through his tenants, was in possession until September 30, 1916, when he assigned his leasehold to the Hedwall Investment Company, a corporation controlled by him. That company assigned to Samuel W. Batson in April, 1917. In October, 1921, Batson contracted to sell the leasehold to one Schneider. In May, 1922, Schneider assigned his interest to Woodland Homes Company. In March, 1927, the Batson-Schneider contract having been performed, the Woodland Homes Company, as assignee of Schneider, took an assignment of the lease. The Woodland Homes Company was a subsidiary of the Staring Company, another corporation engaged in the real estate business. The Staring Company paid the ground rent direct to plaintiffs from the time the interests of the Woodland Company attached.

The quarterly instalment of $625 due March 1, 1927, was not paid until April 18, 1927. The next, due June 1, was not paid until August 1. There was default again in the payments due September 1 and December 1, 1927. December 24 the Staring Company paid plaintiffs $843.75, upon a statement that it covered the instalment due September 1, with interest, and ground rent for December, 1927. That payment was accepted by plaintiffs, but undisputed evidence indicates that they were persistently dunning the Staring Company for the arrears. There is no evidence that the payment of $843.75 of December 24, 1927, was pursuant to an agree-

ment by plaintiffs that they would thereafter "accept the rent in monthly instalments." No witness so testifies or even suggests. Certainly this one remittance, together with the explanatory statement, did not justify any such conclusion. The payment of $208.33 for the month of December, 1927, can be taken as nothing more than a payment on account of a sum already due.

The Staring Company issued a check January 3, 1928, apparently intending it to cover rent for that month. It was not accepted or used by plaintiffs. January 30, 1928, the Staring Company paid plaintiffs $416.67, which with the payment of $208.33 of December 24 covered the $625 instalment due December 1, 1927. Default again occurred March 1, 1928, and in all the remaining instalments, except that June 2, when the arrears had reached $1,250, plaintiffs accepted on account $50, and July 31, 1928, $300 more. During all that time the Staring Company was being pressed for full payment and was promising to make good. November 13, 1928, the company went into receivership. Its subsidiary, the Woodland company, followed in March, 1929. Default in the payment of taxes began in 1927 and has continued.

The lease contained no restriction on assignment of the leasehold. Nothing is better settled than that surrender of a lease, or release of a lessee, is not to be implied from the mere facts that the lessor has assented to an assignment and accepted rent from the assignee. Stern v. Thayer, 56 Minn. 93, 57 N. W. 329; Hilzinger v. Novak, 172 Minn. 369, 215 N. W. 515. So it is not enough for defendant that plaintiffs knew of the several assignments and accepted rents from the assignees. The lease was of the ground rent variety, and counsel regard it, correctly, as in the nature of an investment or security for plaintiffs. The intention is plain that the defendant might assign, and that if he did the normal course would be for the assignee to pay rent directly to the lessors. That was to defendant's interest and what he wanted. Not only is there no evidence of an agreement on the part of plaintiffs to surrender, but every consideration of good business was against it because of defendant's financial responsibility.

The lease provided that if the lessee did not insure the buildings as he and his assignees agreed to, "the lessor may procure such insurance at the expense of the lessee." If the lessee or his assigns did not insure, the lessor had the privilege, but was under no obligation, to insure at their expense. Even though the building was destroyed by fire, the lease would continue, the lessor's only obligation being not to repair or rebuild but to apply upon the cost of repair or reconstruction the amount of any insurance collected by him.

After Batson's contract was assigned to Woodland Homes Company, insurance was procured by the latter, and the coinsurance riders on the policies were signed, we are told, by plaintiffs. These riders made loss payable first to a mortgagee; then to plaintiffs, as owners; then to "Batson, lessee, or assigns"; and "fourth: to the Woodland Homes Company, holder of contract for the purchase of lease from S. W. Batson, as their respective interests may appear." These riders do not show a surrender by plaintiffs of their right to hold defendant. Neither do they indicate that defendant was in any way prejudiced. Plaintiffs were under no obligation to see that *his* interest was insured. Aside from that, it may be safely assumed that, in view of their assumption of defendant's obligations as lessee, insurance procured by his several successors in interest inured to his benefit.

Complaint is made of the exclusion of defendant's offered proof of plaintiffs' failure to keep him informed thereof, and what "defendant would have done in 1927 had he known of the delinquencies in the payment of rent and taxes." The lease was freely assignable and assignment contemplated. It was incumbent upon defendant to protect himself against delinquencies of his assignees. Neither the lease, nor the law otherwise, imposed any such duty on plaintiffs. They did nothing affirmatively to prejudice defendant's rights and are not to be deprived of their own because of their failure to perform a duty not imposed upon them either by law or contract.

It may be that upon assigning the leasehold the primary liability for rent shifted to the assignee, and defendant as assignor became

a mere surety. If that be so, there is yet no proof of such an extension of time of payment as would release a surety. To accomplish that, the mere passive neglect of the creditor to pursue the principal debtor is not enough. Berryhill v. Peabody, 77 Minn. 59, 79 N. W. 651. The extension must be for a valuable consideration and a definite time. Fuller v. Quesnel, 63 Minn. 302, 65 N. W. 634; 6 Dunnell, Minn. Dig. (2 ed. & Supp.) §§ 9095, 9096.

In reviewing such a transaction it should be remembered that the parties want performance rather than default, and their conduct must be gauged accordingly. Here we have nothing more than evidence of mere temporary indulgence extended by creditor to debtor. For that we cannot penalize the creditor to the extent of holding that the original debtor, and possibly the only one now able to respond, has been released, there being nothing on which an estoppel can be based.

An important factor is that defendant had the burden of proof. Not having adduced enough evidence to raise an issue of fact, there was nothing for a jury to try, and defendant could not have been prejudiced by the refusal of his demand for a jury trial. Had it been granted, the jury would simply have listened to the evidence without trying or deciding anything. So the order appealed from must be reversed with directions to enter judgment on the decision below.

So ordered.