### KIRBY et al. v. TIPS et al.
### No. 9866.

Court of Civil Appeals of Texas. Galveston. Jan. 12, 1934.

Rehearing Denied Feb. 1, 1934.

Boyles, Scott & Fahey, of Houston (Pat N. Fahey, of Houston, of counsel), for appellants Bailey and the Scotts.

Cooper K. Ragan, of Houston, for appellant Kirby.

Fulbright, Crooker & Freeman, of Houston (Leon Jaworski, of Houston, of counsel), for appellees.

PLEASANTS, Chief Justice.

This is a suit by appellees against appellants to recover the rents alleged to be due them under a lease contract executed by Gus W. Tips and R. C. Tips on May 1, 1923, by which certain business property in the city

of Houston, situated on McKinney avenue and Austin street, and fully described in the lease contract, was demised and leased to J. R. Bailey for a term of ten years.

The suit is prosecuted by Gus W. Tips, and Mary P. Tips who sues as sole devisee and independent executor of the will of R. C. Tips, deceased. The petition alleges that the plaintiffs, Gus W. Tips and Mary P. Tips, are the owners in fee simple of the leased property, each owning an undivided one-half interest therein, and as such owners are entitled to recover of defendants all of the rents due under said contract of lease. The suit is for recovery against the defendants jointly and severally of the unpaid balance of rent due under said contract of lease up to the 31st day of December, 1931, which the amended petition, filed on February 20, 1932, alleges to be the sum of $3,174.04, with interest and attorney's fees as provided in the lease contract.

The defendants in the suit are J. R. Bailey, John T. Scott, John T. Scott, Jr., and John H. Kirby.

The defendants J. R. Bailey, John T. Scott, and John T. Scott, Jr., answered by general demurrer and general denial. They further specially pleaded that if they were ever bound by the lease and bond pleaded in plaintiffs' petition, they are no longer bound thereon, because the plaintiffs by their acts and conduct have released each and all of these defendants from any and all liability they were under by virtue of said lease contract and bond.

"That on or about the 13th day of December, 1923, the said J. R. Bailey, with the written consent of the plaintiffs, made, executed and delivered to J. T. Scott a written assignment of the said lease between Gus W. and R. C. Tips, as lessors, and J. R. Bailey, as lessee, without any assumption on the part of the said J. T. Scott of the covenants, express or implied, of said lease contract; that by making, executing and delivering said assignment to said J. T. Scott with the written consent of the lessors, plaintiffs here, said J. R. Bailey was relieved from any further obligation to perform the implied obligations of said lease, and remained liable, if at all, only on the express obligations and covenants thereof, and only as surety.

"That on or about the 31st day of July, 1924, the said J. T. Scott, with the written consent of the lessors, plaintiffs herein, assigned said lease to John H. Kirby, who, under the terms of said assignment, assumed the performance of each and all of the covenants, expressed and implied, of said lease contract; that after such assignment by said J. T. Scott to said John H. Kirby, the said J. T. Scott having performed all the obligations of said lease maturing from the said 13th day of December, 1923, to the said 31st day of July, 1924, was relieved of any and all further liability or obligation under the terms of said lease.

"That on or about the 24th day of May, 1928, the said John H. Kirby, by written assignment, assigned said lease to Snelling-Rice Motor Company, which company agreed, by the terms of said assignment, to perform all the obligations imposed by the terms of said original lease to J. R. Bailey from Gus W. and R. C. Tips. That said assignment of said Kirby to said Snelling-Rice Motor Company was made with the written consent of the lessors and plaintiffs herein, but without the knowledge or consent of these defendants. That prior to the 2nd day of June, 1930, the name of Snelling-Rice Motor Company was changed to Rice Motors, Inc., and on said 2nd day of June, with the written consent of the lessors and plaintiffs herein, said Rice Motors, Inc., made, executed and delivered to Downtown Chevrolet Company a written lease on the property covered by the lease sued on. That said written lease of Rice Motors, Inc., to Downtown Chevrolet Company was for the balance of the term of the original lease. That said lease from Rice Motors, Inc., provided for an annual rental of $12,000.00 per year and no more; and was made with the knowledge and consent of the lessors and plaintiffs herein, but without the knowledge or consent of these defendants; that at the time of the making of said lease by Rice Motors, Inc., to Downtown Chevrolet Company said Rice Motors, Inc., had and held in and on said premises, goods, wares and merchandise, and other property subject to the statutory landlord's lien of lessors, of the reasonable value of $10,000.00; that after the making of said lease to Downtown Chevrolet Company, said Rice Motors, Inc., removed all of its stock in trade, merchandise, fixtures and properties from the leased premises, and the said Downtown Chevrolet Company entered upon and occupied said leased premises with the right under its lease from Rice Motors, Inc., with the consent of the lessors and plaintiffs herein, to use and occupy said premises until the first day of May, 1933, at a rental of $12,000.00 per year and no more. That under the laws of this State the lessors and plaintiffs herein had and held a preference lien upon all property of the tenants in said building, including the original lessee and his assignees and all the various subassignees and sub-tenants occupying the same and especially Rice Motors, Inc., to secure the rents due and to become due, reserved and agreed to be paid in the original lease between said Gus W. Tips and R. C. Tips, lessors, and J. R. Bailey, lessee, and said lien inured to the benefit of these defendants, and said J. R. Bailey and J. T. Scott and J. T. Scott, Jr., and any and all of them, were entitled to the protection of said security, and in the event they were ever required to pay the rent provided for in said lease, they would be entitled to be subrogated to all the rights of

plaintiffs in such security. That on the 2nd day of June, 1930, the lien of the plaintiffs and lessors on the property of the Rice Motors, Inc., in said building for rents to become due was in full force and effect and continued in full force and effect for one month after said property was removed from said premises and building, and said lien secured all rent to become due during the current contract year; that is, until the first day of May, 1931."

This answer further avers in substance that by the terms of the original lease it was agreed that the lessee would pay to the lessors as rent for the leased property during the first five years of the term of the lease the sum of $38,839.60, payable in monthly installments of $647.33; the first installment being paid on the date of the execution of the lease, and the remaining installments being due and payable on the first of each month thereafter during said period of five years. This amount of rent was fixed by allowing the lessors 6 per cent. interest per annum upon the agreed value of the land at that time, which was placed at $60,000, and 8 per cent. interest per annum upon the actual cost of the improvements thereon. The lease further provided that at the end of the first five years the premises should be revalued and the amount of rents for the remaining five years would be an amount equal to 6 per cent. interest per annum on the value of the land and 8 per cent. interest on the value of the improvements, which should remain as fixed for the first five years, and that in no event should the value of the land be less than its value at the time of the execution of the lease. The lease contract further provides: "In the event the parties hereto are unable to agree upon a value of said land for the purpose of arriving at the rental of same, as above provided, then each shall appoint an appraiser and the two so appointed shall appoint a third, whose valuation, subject to the conditions above, shall be conclusive. In the event any charges for their services are made by the appraisers, the cost of same shall be paid by lessee and lessors in equal amounts. Such amount as is arrived at as the annual rental of said premises for such remaining five years shall be payable in equal monthly installments in advance just as the rental during the first five years."

These defendants further aver: "That at the end of the first five year period mentioned in said original lease, the time fixed for the revaluation of the property described therein, the lessors, plaintiffs herein, made no attempt to agree upon the valuation of said property with J. R. Bailey, the other party to said contract, for the purpose of arriving at the rental of same as provided in said contract, but totally disregarded the said J. R. Bailey in the revaluation of said property, and when the lessors, plaintiffs herein, could not agree with John H. Kirby, the assignee of said lease, as to the value of said property, said lessors, plaintiffs herein, appointed an appraiser and said John H. Kirby, the then assignee of said lease, appointed an appraiser, and the two appraisers so appointed, appointed a third appraiser to appraise said property, and the appraisers so appointed valued the property at One Hundred Thousand and No/100 Dollars ($100,000.00) for the tract of land and Fifty-Two Thousand Three Hundred Thirty-One and 61/100 Dollars ($52,331.61) for the improvements thereon, and thereupon the said lessors and plaintiffs herein, and the said John H. Kirby adopted said values as the basis for the payment of rent during the said second five year period."

This answer further pleads that by plaintiffs' failure to agree with the defendant Bailey upon the revaluation of the property at the end of the first five years of the lease, or to permit him to have a voice in the selection of appraisers of the property, as provided in the lease, both he and his bondsmen, J. T. Scott and J. T. Scott, Jr., are released from primary liability under such lease contract; and further pleads that these defendants are released from all liability under their contract by reason of plaintiffs' consent to the lease made by the Rice Motors, Inc., to the Downtown Chevrolet Company for the remainder of the term of the lease, and by permitting the Rice Motors, Inc., to remove its stock of automobiles and other property kept in said leased premises and upon which plaintiffs had a landlord's lien to secure the rents due on the property.

Following his general demurrer and general denial, the answer of defendant John H. Kirby specially pleads that the lease sued on by plaintiffs was transferred and assigned to him by J. T. Scott on July 31, 1934, in consideration of his assumption of all of the obligations enjoined by the lease upon the lessee; that this defendant performed all of the obligations of said lease, and paid all rents due thereon up to the expiration of the first five years of the term of the lease, and that on May 24, 1928, he transferred and assigned the lease to the Snelling-Rice Motor Company for the sum of $10 and the assumption by that company of all of the obligations of the lease, and that this transfer and assignment was made with the written consent of plaintiffs; that the said motor company had and remained in possession of the premises until it assigned said lease to the Downtown Chevrolet Company on June 2, 1930 (at which time the name of the motor company had been changed to Rice Motors, Inc.), which said assignment to the Chevrolet Company was made with the written consent of plaintiffs. This answer further avers:

"That all of the negotiations relative to

the assignment of said lease from Rice Motors, Inc., to Downtown Chevrolet Company were conducted without notifying this defendant concerning the same, and that such assignment, to which the plaintiffs herein consented, was concluded without the knowledge or consent of this defendant; that he did not learn of the said lease assignment and the removal by the Rice Motors, Inc., of all of their property from the demised premises until a long time thereafter; that the said lessors, plaintiffs herein, consented to the said assignment and cooperated with and assisted the Rice Motors, Inc., in making such assignment, and consented to the removal of all of the property of the Rice Motors, Inc., from the leased premises without even notifying this defendant.

"Defendant Kirby says that the plaintiffs, their agents and representatives, were acquainted with the provisions of the assignment of the demised premises by the Rice Motors, Inc., to the Downtown Chevrolet Company and were acquainted with the circumstances and transactions relating to such assignment; that representatives of the Rice Motors, Inc., consulted with them prior to such assignment, and fully acquainted them with all the terms and conditions of the same; that if said plaintiffs, their agents and representatives did not know the specific terms and conditions of such assignment from Rice Motors, Inc., to the Downtown Chevrolet Company, they did know that such assignment had been made, having given their written consent to the same, and they were under duty to use that diligence which an ordinarily prudent business man would use under the same or similar circumstances to find out the terms and conditions of said assignment from Rice Motors, Inc., to the Downtown Chevrolet Company, and having failed to use such diligence, they are chargeable with the knowledge of the provisions of said assignment, and are now estopped to say that they were not so acquainted with the terms and provisions thereof.

"Under and by virtue of the terms of said transfer and assignment from Rice Motors, Inc., to the Downtown Chevrolet Company, the balance of the term of the original lease contract, to-wit, June 1, 1930, to May 1, 1933, was assigned and set over to the Downtown Chevrolet Company; that it became obligated to pay as rental only the sum of $12,000.00 per year, or $1,000.00 per month, which is less than the amount of rental stipulated for in the original lease contract; that this suit is for the difference between such amount and the alleged amount due under the alleged lease.

"That after the above assignment was made some time during the month of June, 1930, Rice Motors, Inc., removed from the leased premises all of their stock of automobiles, used and secondhand, shop equipment, tools,

office furniture, and all other property which this defendant alleges to be of a reasonable value of $10,000.00; that the Rice Motors, Inc., the assignee and owner of said lease, were tenants of said plaintiffs, who at all times during the occupancy of the said premises by the said Rice Motors, Inc., and more especially at the time of the assignment above mentioned, had and held a first and superior landlord's lien on all of the property of the Rice Motors, Inc., situated on the demised premises to secure the payment of all rental and charges accruing under the terms of the original lease.

"That said defendant Kirby, having assigned said lease as heretofore set out with the consent of the said lessors, became and was released from further liability under said lease, but if the Court holds that he was not so released, then he alleges that after such assignment he was no longer bound to the plaintiffs as a primary obligor on said lease, and became only a surety for the performance of the express covenants only of the said lease by the Rice Motors, Inc., and such being his legal relation to said plaintiffs he became and was entitled to have said plaintiffs protect whatever the said Rice Motors, Inc., either for their account or for the benefit of this defendant; that plaintiffs knew that Rice Motors, Inc., had a large amount of personal property situated on the demised premises which was subject to a first and superior landlord's lien for the performance of the covenants of said lease contract, and having knowledge of the assignment of said lease by Rice Motors, Inc., they knew that said Rice Motors, Inc., did remove all of such property from said premises, and they further knew that the effect of their consenting to such assignment from Rice Motors, Inc., to the Chevrolet Company would be a surrender of possession by the Rice Motors, Inc., and the removal of such property which was security for the payment of the rent to said plaintiffs; that if they did not know such facts, then they were under the duty to use reasonable diligence to ascertain the true facts, and having failed to exercise due diligence, they are now estopped to say they did not have knowledge of the removal of the property of the Rice Motors, Inc., from the leased premises; that the lessors in consenting to the said assignment from the Rice Motors, Inc., to the Downtown Chevrolet Company for the balance of the term of said lease at an annual rental of only $12,000.00 per year, or $1,000.00 per month, which is less than the amount plaintiffs allege is stipulated for in the original lease for the balance of the term of said lease, and in consenting to the removal of said Rice Motors, Inc., of all of their automobiles, shop equipment, tools and office furniture from the demised premises which was security for the benefit of the said plaintiffs and this defendant for the payment of all rent accruing under the al-

leged lease contract, and in consenting to the occupancy of the demised premises of the Downtown Chevrolet Company under said assignment and transfer, did as a matter of law operate to make a new contract of lease covering said premises in substitution for and in lieu of the original lease contract to which defendant Kirby was not a party; that such new contract having been made between the said plaintiffs, Rice Motors, Inc., and the Downtown Chevrolet Company, the said Kirby, not being a party thereto, is no longer liable under the original lease or any assignments thereof, and his liability terminated thereunder at the date of the inception of the new contract, to-wit, on or about June 2, 1930. * * *

"Defendant Kirby further says that the said plaintiffs in consenting to the above assignment from the Rice Motors, Inc., and in consenting to the removal by it of all of its property from said premises which was security for the performance of all of the covenants and conditions of said lease, being for the benefit of the plaintiffs and the sureties on said lease, deprived this defendant of the right to apply said property in payment of all rents accruing to plaintiffs under said lease; that by reason thereof, this defendant is not liable to said plaintiffs as they allege."

These answers are lengthy and go into a detailed statement of the facts pleaded in defense. We have copied the pleadings more at length than may have been necessary, but by so presenting the material contentions of the defendants in their pleadings we hope to be able to shorten the statement of assignments and propositions which in effect present the contentions made in the answers.

The trial with a jury in the court below resulted in a judgment in favor of plaintiffs against all of the defendants for the amounts claimed in their petition, and in favor of defendants Bailey, Scott, and Scott, Jr., over against their codefendant Kirby for the same amount.

The following statement of the evidence upon the fact issues in the case, none of which is disputed, is copied from appellees' brief:

On May 1, 1923, R. C. Tips and Gus W. Tips, as lessors, and appellant J. R. Bailey, as lessee, entered into a lease agreement covering certain premises situated in the city of Houston, Harris county, Tex.; the term thereof being ten years. Contemporaneous therewith, lessee J. R. Bailey, as principal, and J. T. Scott and J. T. Scott, Jr., as sureties, all appellants herein, executed a bond in the sum of $20,000, conditioned on the faithful performance of the terms and provisions of said lease contract, and particularly binding themselves, to the extent of that sum, for the payment of all rents to accrue under said lease. The appellants J. R. Bailey and J. T.

Scott, Jr., were jointly interested in the lease, although J. R. Bailey alone executed the lease as lessee. The appellant J. R. Bailey is the son-in-law of the appellant J. T. Scott, and the appellant J. T. Scott, Jr., is the son of J. T. Scott. On the 13th day of December, 1923, appellant J. R. Bailey assigned this lease to appellant J. T. Scott. Article X of the lease provides that "lessee may sublet any part of said premises without the permission of lessors, so long as said parties conduct a business in keeping with the provisions in the ninth paragraph hereof, but lessee shall not sublease the whole of said premises or vacate the premises and lease to another without notice being given to lessors before he vacates said premises or leases to another, and in such event such tenants having the whole of said premises shall be acceptable to lessors as above provided," and accordingly, in connection with the assigning of said lease to appellant J. T. Scott, appellant J. R. Bailey requested the permission of the lessors thereto. The permission requested was given by letter signed by the lessors, the pertinent parts of which read as follows: "We beg to advise that this letter evidences our permission for said assignment, without, however, releasing you from any liability under said lease." During the month of July, 1924, the appellants J. R. Bailey and J. T. Scott requested the lessors to give them permission for the assignment of said lease to John H. Kirby, and pursuant to said request, the lessors, on July 16, 1924, wrote a letter to Messrs. J. R. Bailey and J. T. Scott; the material parts thereof reading as follows: "Beg to advise that this letter evidences our permission for said assignment, without, however, releasing you, or either of you, from any liability under said lease." Thereupon, on July 31, 1924, appellant J. T. Scott assigned said lease to appellant John H. Kirby, and under the terms of said assignment appellant Kirby agreed to perform all the obligations imposed upon the lessee by the terms of the lease in question.

The rentals to be paid for the first five years of the ten-year term was set out in the lease in dollars and cents, but as to the remaining five years, said lease provided as follows: "At the end of said first five (5) years, the premises shall be revalued, and the rental for such remaining five (5) years shall be such amount as shall be equal to six per cent. interest per annum upon the value of the land at that time, and eight per cent. interest per annum upon the value of said improvements, which value of said improvements shall remain as now fixed. In no event shall the value of the land be less than the value now placed upon it. In the event the parties hereto are unable to agree upon a value of said land for the purpose of arriving at the rental of same, as above provided, then each shall appoint an appraiser, and the

two shall appoint a third, whose valuation, subject to the conditions above, shall be conclusive. In the event any charges for their services are made by the appraisers, the cost of same shall be paid by lessee and lessors in equal amounts. Such amounts as are arrived at as the annual rental of said premises for such remaining five years shall be payable in equal monthly installments, in advance, just as the rental during the first five years."

At the end of the first five years, the leasehold estate was still held and occupied by the appellant John H. Kirby, under the assignment from J. T. Scott above mentioned. The lessors and said appellant John H. Kirby, as the then owner of the leasehold estate, were unable to agree on the proper valuation to be placed on the property, and as a consequence it was necessary to have a board of appraisers appointed. In accordance with the terms of the lease, the lessors appointed one member of the appraisal committee, one was appointed by the appellant John H. Kirby, and the third was selected by the two so appointed. The valuation was made as of May 1, 1928, and a written report dated May 24, 1928, was filed with the lessors and the owner of the leasehold estate on said date. In this report the committee stated that it was the unanimous opinion that the market value of the land as of May 1, 1928, was $100,000.

While this process of revaluation was in progress, appellant J. T. Scott, according to his own testimony, "interceded with the Houston Land & Trust Company to get the valuation cut down." Houston Land & Trust Company acted as agent for the lessors. This action on the part of appellant J. T. Scott in "interceding with the Houston Land & Trust Company to get the valuation cut down" was in fulfillment of a request made by Mr. Clark, agent and representative of appellant John H. Kirby.

On the same date this appraisal report was made, the lessors gave appellant John H. Kirby written permission to assign the leasehold estate to Snelling-Rice Motor Company; the material part thereof reading as follows: "This will evidence our permission for said assignment, without, however, releasing you from any liability under said lease." After gaining said permission, and on the same date, appellant John H. Kirby assigned said lease to Snelling-Rice Motor Company, the latter assuming the performance of all obligations imposed by the terms of said original lease. The name of the assignee, Snelling-Rice Motor Company, was changed to "Rice Motors, Inc." The appellant John H. Kirby owned one-third of the stock of Rice Motors, Inc., and his agent and representative, who also held his power of attorney, E. V. Clark, was a director of Rice Motors, Inc.

On June 12, 1928—approximately three weeks subsequent to the date the appraisal report was filed and the leasehold estate assigned by appellant John H. Kirby to Snelling-Rice Motor Company—the following letter was written by appellant J. T. Scott to the lessors:

"Houston, Tex., June 12, 1928.

"Messrs. R. C. and Gus W. Tips,

"Houston, Texas.

"Gentlemen:

"This is to advise that on or about July 31, 1924, I sold to Mr. John H. Kirby my interest in a certain lease dated May 1, 1923, between J. R. Bailey, on the one hand, and you on the other, covering certain property on the corner of Austin Street and McKinney Avenue, in this City, with the understanding that he assume all the obligations outlined in the lease, and I have his written acknowledgment to this effect in my possession. The lease requires, however, your permission to such assignment, and I hereby request your consent to the transfer, without, however, releasing me of any liability thereunder.

"Yours very truly, J. T. Scott."

In response to a request made by Rice Motors, Inc., for permission to sublease the premises, the lessors, on May 3, 1930, wrote the following letter:

"May 3, 1930.

"Rice Motors, Incorporated,

"1400 McKinney Avenue,

"Houston, Texas.

"Gentlemen:

"This letter will evidence our permission to sublease to Downtown Chevrolet Company the premises now occupied by your company under various subleases from the original lessee, Mr. J. R. Bailey, without, however, releasing the original lessee or any of his assignees.

"Yours very truly, R. C. Tips,

"Gus W. Tips."

Accordingly, on June 2, 1930, Rice Motors, Inc., and Downtown Chevrolet Company entered into a lease agreement on the premises in question for a term commencing June 15, 1930, and expiring May 1, 1933, at the yearly rental of $12,000—an amount less than that provided for under the original lease agreement between the lessors and appellant Bailey. Rice Motors, Inc., removed from the premises on the last day of June and the first day of July, 1930.

The undisputed testimony shows that the full amount of the rent for the months of July and August, 1930, was paid by Rice Motors, Inc., direct to the lessors. Likewise it is undisputed that Mr. O. R. Weyrich, vice president of Houston Land & Trust Company, was handling the matter of the giving of permission by the Tips to Rice Motors, Inc., to sublease to Downtown Chevrolet Company, and that when this permission was given, Mr. Weyrich had no information or knowledge of the terms, provisions, and conditions of the

lease arrangement that was to be entered into between Rice Motors, Inc., and Downtown Chevrolet Company.

Two or three months thereafter, the monthly rental payments fell into arrears, and although demand was made of appellants for payment of the rentals that had accrued and were past due, same remained unpaid.

At the conclusion of the evidence the trial court instructed the jury to return a verdict in favor of the plaintiffs, in accordance with which the judgment was rendered.

■ Appellants Bailey, Scott, and Scott, under appropriate assignments and propositions, first assail the judgment on the ground that they cannot be held liable for any of the rents due on the leased premises subsequent to the end of the first five years of the term of the lease, because the appraisal of the property upon which the rents charged for the last five years of the term is based, under the provisions of the lease contract, was without the original lessee, Bailey, having any participation in the negotiations as to fixing the value of the property, or in the selection of the appraisers upon the failure of the lessor and Kirby, the assignees of Bailey and Scott, to agree upon the value of the property, and without any knowledge on the part of said appellants of the making of such appraisal.

There is no merit in this contention. It cannot be doubted that Kirby, who was in possession of the property as assignee of J. T. Scott, to whom the lease had been assigned by the original lessee, had succeeded to and held all of the right of Bailey, the original lessee, and as such assignee he had the right to participate in the revaluation of the property under the terms of the lease. In the absence of allegations and proof of fraud and collusion in such revaluation, the assignors of Kirby must be held bound by the appraisal of the value of the property made in accordance with the provisions of the lease. This covenant of appraisement runs with the land, and the parties who are to select the appraisers are those who at the time of such appraisal are the holders of the reversion and leasehold, respectively. Tiffany on Landlord and Tenant, vol. 1, p. 1050. The same rule is laid down in the following authorities: Corpus Juris, vol. 35, p. 995, § 96; R. C. L. vol. 16, p. 848, § 348; Thompson on Real Property, vol. 2, p. 491, § 1372.

Mr. Tiffany, in his book before cited, volume 1, p. 169, § 54, thus states the rule: "As regards rights and liabilities arising from privity of estate, that is, based on the relation of tenancy, the assignee of the leasehold interest is substituted as tenant for his assignor."

This rule seems to us to be clearly consonant with reason and justice. Our own Supreme Court has followed the rule in approving the opinion of the Commission of Appeals (249 S. W. 175, 180) in the case of Cauble v. Hanson (Tex. Civ. App.) 224 S. W. 922. The rule has also been approved by the Supreme Courts of a number of our sister states.

There are no reservations in the assignments made by Bailey and Scott, but these assignments by their express language pass "all and singular the rights, privileges and appurtenances in any manner belonging" to the assigned leasehold estate. Under such assignment all rights in regard to the revaluation of the property passed to the appellant Kirby, and all of the assignors of the several assignments are bound by the valuation fixed by the appraisers selected by Kirby and appellees.

Appellants Bailey, Scott, and Scott seem to base their contention of their right to participate in the revaluation of the property solely on the ground that after assignment by these appellants, with the consent of appellees, of all their interest in the leasehold estate, Kirby became primarily liable for the rents, and their liability is only that of a surety. This is true as between them and Kirby, but when they have expressly assigned to Kirby all of the rights in respect to the revaluation of the property they must be held bound by the revaluation of the property made by and between appellees and Kirby in accordance with provisions of the lease. The extent to which appellants can claim any protection from their position of secondary liability is clearly stated in the following quotation from the case of Gray v. Tate (Tex. Civ. App.) 251 S. W. 820, 822: "Upon the assignment of the lease to Bracken and Byers and its acceptance by them they became liable to Tate (lessor) for the payment of the stipulated rental jointly with Gray & Little (lessees). Furthermore as between the original lessees and the assignees, the latter became primarily liable for its payment and the liability of the original lessees became in the nature of suretyship. Such lessees were entitled to recover over against the assignees for any rental which they might be required to pay by reason of the assignees' default."

In addition to all that we have said on this matter, the evidence shows that both Bailey and J. T. Scott knew of the pending question of the revaluation between Kirby and appellees. Bailey testified: "I was not familiar with who was going to make the appraisal. I knew the appraisal was to be made, but I was not concerned in who was to make it."

Mr. Scott knew of the revaluation proceedings, but testified: "I did not figure I was interested."

The letter of Mr. Scott to appellees asking their written approval of his lease to Kirby was written some weeks subsequent to the date the appraisal was filed, and the leasehold estate assigned by Kirby to the Motor Company. This letter, after stating that he

had neglected to get this written consent to his assignment to Kirby, further says: "The lease, however, requires your permission to such assignment and I hereby request your consent to the transfer, without, however, releasing me of any liability thereunder."

If the rule of law was otherwise than as before stated, it seems clear to us that appellants could not now be heard to complain of this appraisal on the ground that they were not invited to participate therein.

We cannot agree with the contention of all of the appellants that the granting of a written permission of the lessors for the assignments of the lease released the prior assignees. This question was decided in favor of appellees in the case of Cauble v. Hanson, before cited. In that case Hanson sued the original lessee for rents accruing during the time the property was held by an assignee of the original lessee under an assignment made with the consent of the lessor. In that case, as in the instant case, the lessee agreed to pay the rents on leased property for a term of ten years, and before the end of the term he assigned the lease. In answering the contention of appellants that this consent to the assignment of the lease released them of further liability thereon, the court says: "Hanson had a perfect right to rely upon his contract and note. He could have refused to consent to an assignment by Cauble to Clegg. On the other hand, if he wanted to do all he could to accommodate the Caubles and let them try to work out their debt to him through another, certainly the Caubles should not be permitted to penalize him for his generosity. It might frequently happen that a landlord would be willing to help the original lessee in every way he could, except to go to the limit of releasing him from liability and wholly endangering his contract. A tenant under a long lease, frequently desires to vacate premises and do something else. Under such circumstances, a landlord might be willing to permit the tenant to make other arrangements for the use of the property. If the original lessee is solvent, the landlord would likely not object to the efforts of the original tenant to work out his own problems and put some one else on the premises, if the new tenant was acceptable on moral grounds. On the other hand, a landlord might, and would likely, object to the premises being turned over to a third party if the original lessee wished to escape liability under his contract. It seems to us that this is too clear for argument. When a man makes a binding contract for a number of years, he must pay it himself or be released from doing so, either by the express act of the payee in the note, or impliedly released by acts of the payee inconsistent with the theory that he was still holding the maker of the note liable thereon."

In the instant case the appellees do not have to rely solely upon the express agreement of the original lessees to pay the rents on the property during the full term of the lease, but, as by the undisputed facts before set out, conditioned their written consent for each of the assignments of the lease on the unimpaired continuance of the liability of all prior assignors of the lease.

Appellants further insist that they are released from all liability for the rents involved in this suit on the ground that appellees permitted the motor company, when it with appellees' consent assigned the lease to the Chevrolet Company, to thereafter remove from the rented premises a large stock of automobiles upon which appellees held a statutory lien to secure the payment of all rents that might accrue under the lease held by the motor company.

We agree with appellees that the effect of this contention is to impose upon appellees duties and obligations more onerous than they contracted to perform, and those exacted of them by the law. We have already shown that in each of appellees' written permissions for the several assignments of the lease they expressly reserved all of their rights against the original lessee and the subsequent assignors of the lease. None of the assignments of the lease made by any of the appellants made any restriction upon the right of the assignee to reassign the lease, and we know of no legal or equitable principle which would charge appellees with the duty of protecting appellants against a loss which they did not contemplate, and failed to provide against in their several assignments of the lease. The undisputed evidence shows that at the time the motor company re-leased to the Chevrolet Company, the rent was fully paid, and that after the date of such assignment the rent was paid by the Chevrolet Company for two or three months. The fact that appellants may not have been informed of the fact that the motor company was removing their automobiles from the leased premises in no way released them from the duty to protect themselves if they could have done so under the terms of the assignment to the motor company.

So far as we are informed, this exact question has not been passed upon by the courts of this state. However, the question has been decided by the Supreme Court of Minnesota in the case of Wilcox v. Hedwall, 185 Minn. 8, 239 N. W. 763, 766. In disposing of the question, the court says: "Complaint is made of the exclusion of defendant's offered proof of plaintiffs' failure to keep him informed thereof, and what 'defendant would have done in 1927 had he known of the delinquencies in the payment of rent and taxes.' The lease was freely assignable, and assignment contemplated. It was incumbent upon defendant to protect himself against delinquencies of his assignees. Neither the lease, nor

the law otherwise, imposed any such duty on plaintiffs. They did nothing affirmatively to prejudice defendant's rights, and are not to be deprived of their own because of their failure to perform a duty not imposed upon them either by law or contract."

The terms of the original lease expressly provide that in case of failure to comply with its terms "all expenses, costs and attorneys' fees incident to breach of its provisions shall be borne by the lessee herein, and lessee agrees and binds himself, his successors and assigns, to pay any such losses * * * as defined in the lease."

As we have before held that none of the assignees were released by any act or omission of the appellees from the obligations of the original contract, appellants are bound for the payment of all expenses and costs, including the attorneys' fees.

What we have said disposes of what we regard as the material questions presented by this appeal. All of appellants' propositions have been considered, and none of them, in our opinion, should be sustained. It follows from the conclusions above expressed that the judgment should be affirmed, and it has been so ordered.

Affirmed.