THEO. BURTON, JR. & CO., a corporation of the State of Delaware, Plaintiff, v. ANDREW L. BURKS, Defendant.

(*September* 10, 1962.)

LYNCH, J., sitting.

*Robert W. Tunnell* (of Tunnell and Raysor) for Plaintiffs.

*Houston Wilson* for Defendant.

Superior Court for Sussex County, Nos. 263 and 264, Civil Action, 1959.

LYNCH, J.:

Two actions were instituted against the named defendant on December 9, 1961 by two plaintiffs. The complaints alleged monies lent and advanced, and paid, laid out and expended, by the named plaintiffs[1] to and for the use of the

---

[1]Theo. Burton, Jr. & Co., plaintiff in 263 Civil Action, 1959, above, and Burton Chevrolet Sales, Inc., plaintiff in 264 Civil Action, 1959, above, merged May 12, 1959. The resulting corporation was Theo. Burton, Jr. & Co., a Delaware Corporation. As a consequence both such Civil Actions were merged or consolidated into No. 264 Civil Action, 1959. See consent, motion and order of the Court entered at the commencement of the trial on May 3, 1961 (R5). Throughout this opinion my use of the word plaintiff refers to the resulting corporation that came into being through the merger.

defendant, at his instance and request, in the unpaid amount of $2,200.21 (see Amended Complaint in 263 Civil Action, 1959) and $1,986.12 (see Amended Complaint in 264 Civil Action, 1959), respectively, together with interest and costs.

There was an amendment filed by plaintiff by which it was sought to charge that the defendant had on February 5, 1959 acknowledged and promised to pay plaintiff the total amount of these two accounts, making it an account stated.

Trial was held by the Court, without a jury, on May 3, 1961. These consolidated actions are now before the Court for final decision. The trial was upon the amended complaints, amended answers, testimony and exhibits. Briefs were filed by counsel about September 1, 1962.

When the trial was concluded, defendant's attorney moved to strike certain testimony and likewise moved to dismiss the complaints. The Court considers it necessary to review a transcript of the trial and consider what was shown by the evidence and certain of the exhibits produced at the trial.

### The Facts

From my review of the case it appears that Theo. Burton, Jr. & Co. and Burton Chevrolet Sales, Inc. were, prior to 1958, active Delaware corporations; the former operated a garage at Georgetown, Delaware for the sale of new and used automobiles, and conducted also an auto repair shop, while the latter corporation operated a garage and sales room in Millsboro, Delaware for the same purposes. The Georgetown operation was originally opened by Theodore Burton, Jr. who was the father of Louis W. Burton and Theodore Burton, III.

After his death his widow (the mother of Theodore Burton, III and Louis W. Burton) married the defendant, Andrew L. Burks in January of 1946.

The defendant went to work for Theo. Burton, Jr. & Co. He worked in the capacity of salesman and stayed with that corporation until 1954, at which time he went to manage the new enterprise at Millsboro, Delaware—Burton Chevrolet Sales, Inc.—where he remained for some time. He was discharged from this employment late in 1958.

In August of 1959 most of the assets of Burton Chevrolet Sales, Inc. were sold to a corporation by the name of Simmons Chevrolet. The accounts receivable, however, were not transferred to Simmons Chevrolet. These assets through merger, together with certain other assets of Burton Chevrolet Sales, became assets of Theo. Burton, Jr. & Co.

Plaintiff, to prove its case, called defendant as its witness. The defendant testified that his wife was President of both corporations and that her son, Theodore Burton, III, was Vice President.

Mr. Burks recalled monies having been advanced to him to pay his expenses and those of other corporate personnel in attending dealers' conventions or in making other trips he had taken on behalf of the corporations. He knew that household expenses of his wife were paid by the corporations but that he had no knowledge that these expenses were charged to him. He testified he did not ever authorize or request these expenses to be charged to him.

Defendant recalled his wife obtaining advances of cash from the corporation while she was in Florida, looking after the affairs of her two aunts there; again he testified that he never did know, nor request, nor authorize such advances to be charged to him.

He recalled securing inter-week advances for his own personal use, which advances he said would be deducted from his weekend salary checks. He recalled that tradesmen or shopkeepers would stop in the corporate offices during his

absence with personal charges against him and the office staff would pay such items; that they would tell him about these payments. He testified he always reimbursed the corporation for such payments.

Defendant contends that at no time until August of 1959 did he ever know about or receive a demand, statement, or account of items totaling the present claims, or any part thereof. Mr. Burks' testimony was to the effect that all loans, or advances, or items paid, laid out or expended for his personal use were either deducted from his current week-end salary checks or were reimbursed by him to the corporation in question when he was advised thereof.

The plaintiff, to further prove its case for these claims, called as witnesses Arthur T. Lingo, bookkeeper of Burton, Thomas Stuart Russell, Office Manager of Burton, Wilson G. Boyer, Office Manager of Sales, and Theodore Burton, III, Vice-President of both Burton and Sales.

Subject to objection, certain original ledger cards, copies of which are attached to the complaints as Exhibits A, representing these accounts receivable items, were admitted, not as evidence of the transactions reflected thereon by way of a book account, but as aids to memory as or "past recollection recorded" of Messrs. Lingo and Russell, on the one part, and Mr. Boyer on the other part.

These three gentlemen—Messrs. Lingo, Russell and Boyer—testified in brief that any authority for any given loan or advance, or expenditure of corporate funds for the defendant had to come from Mrs. Burks, the President, or from Theodore Burton, III, the Vice President, one of which had to co-sign each corporate check.

None of these gentlemen had any independent recollection or independent knowledge of any authorization for any of the alleged loans, advances, or expenditures made to or for

defendant's use; none had any independent recollection or independent knowledge that any item appearing upon these ledger cards constituted a loan, or advance, to defendant or expenditure made by plaintiff to or for the use of the defendant.

The recollection of Theodore Burton, III was very general; he stated that there were occasions when he had authorized specific advances by the corporations to the defendant; he had, however, no recollection of authorizing any expenditures for the use of the defendant and he could not testify to any specific transaction reflected upon the ledger cards.

Mr. Lingo testified he merely posted items reflected on the ledger card and that he got his information from check stubs. The check stubs, incidentally, were never produced in evidence, nor were the checks. Mr. Lingo did not prepare the checks or stubs; he did not personally participate in any way in any of the transactions.

Mr. Russell testified he made no loans to or authorized any expenditures for the use of the defendant in behalf of Burton; such were handled by Theodore Burton, III. Loans and advances were made by check or from petty cash or from the cash register on the say-so of Theodore Burton, III; none of these were based on any say-so of the defendant.

It was testified that the items appearing on the ledger cards had been posted by a Mrs. Brittingham from check stubs. She did not testify. It was stated that no petty cash or cash from the cash register was ever used for cash disbursements, such as are claimed here. Mr. Boyer did not keep the ledger cards. He believed the cards truly reflected what appeared on the check stubs and that the check stubs truly reflected the nature of the transaction for which the check was issued. Mr. Boyer otherwise had no independent recollection or knowledge of any of the transactions upon which this suit is instituted, except to say he countersigned

all checks, after they were filled out. The other co-signer was Mrs. Burks who generally would sign a supply of them in blank before they were filled out and handed out.

Mr. Boyer's authority to make loans, or advances, or expenditures to or for the use of Mrs. Burks, and/or the defendant, Theodore Burton, III, came as a general proposition from either Mrs. Burks or Theodore Burton, III. Mr. Boyer could not testify to any knowledge whatever as to why any particular or specific item sued on was charged upon Mr. Burks' ledger card (Arthur T. Lingo, Thomas Stuart Russell, Wilson G. Boyer and Theodore Burton, III) (R 68-136).

Plaintiff sought to amend the theory of its claim by seeking to prove defendant's obligations were based on an account stated.

The basis for this change in theory—from one seeking recovery on a theory of monies lent and advanced, paid out, laid out and expended to and for use of defendant, at his interest and request—to a theory based on an account stated, was premised primarily on testimony given by a Mr. Mallon.

He gave his version of what had transpired at the home of Louis W. Burton on February 5, 1959, at a meeting—which he said was called—to consider the details of the then considered merger of the two corporations and the proposed reorganization of Theodore Burton, Jr. & Co.

Edward J. Mallon was a representative of William E. Howe Co., Philadelphia, Pennsylvania, the accountants for Theo. Burton, Jr. & Co. He said he attended a meeting of the stockholders and other interested parties of that company to work out some details concerning the merger of Burton Chevrolet Sales and Theo. Burton, Jr. & Co., and the proposed reorganization of Theo. Burton, Jr. & Co.

He said he first went to the company offices and met

Louis Burton and Andrew Burks;[2] then he went to the home of the former in Georgetown; there they met Mrs. Burks and were later joined by a representative of General Motors, a Mr. William Heathcoate.

According to other testimony given by Mr. Mallon, Theodore Burton, III was not present at his brother's home and the defendant went out to find him. Mr. Mallon testified that it took about an hour "for somebody to come back and bring Theodore back to the meeting".

The accounts receivable of Burton Chevrolet Sales and the bank balances were to be turned over to Theo. Burton, Jr. & Co. The outstanding stock of Burton Chevrolet Sales was to be cancelled. Theo. Burton, Jr. & Co. was to acquire the stock of Theodore Burton, III. A trust agreement was to be set up under which the proceeds of the sale of Mrs. Burks' stock was to be used to provide an annuity to her.

Mr. Mallon testified that at that meeting the accounts receivable of Theo. Burton, Jr. & Co., both in its own name and through the company with which it had merged, against certain parties in the room, including Mrs. Burks, the defendant, Louis Burton, and Theodore Burton, III, were the subject of some discussion. Mr. Mallon had prepared a work sheet showing the account receivable owed by each party.

Mr. Mallon testified that Mr. Burks, the defendant, was shown the balance in his individual account and it was also read to him. The account receivable owed by Mr. Burks to Burton Chevrolet Sales amounted to $1,986.12 and that an account receivable amounting to $2,176.40 was owed to Theo. Burton, Jr. & Co.

A discussion then ensued as to whether this combined amount of accounts receivable—owed by Mr. Burks—should be taken from the funds to be paid to Mrs. Burks.

---

[2]See footnote 3.

Mr. Mallon testified that Mrs. Burks advised those present at the meeting that Mr. Burks' account was not to be deducted from her share; that Mr. Burks spoke up, after looking at the balance of his account, and said that he would take care of his own balance; and that not only did Mr. Burks see the account written on the paper, but that the figures were read off in his presence,—prior to the time that he stated he would take care of his own account.

Mr. Louis Burton testified that the defendant, Burks, acknowledged liability on the account, after looking at it on a piece of paper and by saying that he would pay his own balance. Mr. Louis W. Burton (R 170) testified that Mr. Mallon was thinking of taking Mr. Burks' account from what Mr. Louis W. Burton was to pay Mrs. Burks in the resulting reorganization.

Theodore Burton, III, testified that he was at a meeting with Mr. Burks at Louis Burton's home in which the accounts receivable of the company, Theo. Burton, Jr. & Co., were discussed. He states, however, that while he saw his own account receivable, he does not know whether the defendant saw the account which he owed; furthermore, he did not know when the meeting took place.

The defendant denies that he was at such a meeting and Mrs. Burks never testified.

It seems clear that Mr. Mallon did not have an itemized statement showing what items made up the balances (R 157); he could not say that the defendant ever saw an itemized statement (R 157); that the defendant had nothing before him to judge the accuracy of the balances (R 157, 158); that Mr. Burks never said that the balances were correct or that he had checked them (R 158); that nothing was said as to whether he was able to pay it or when he could pay it (R 159); that Mr. Burks did not say when, how or with what he

would pay his account (R 160); that all that Mr. Burks said was—"I will take care of it". As to whether Burks agreed on how much he owed (R 160-161) Mallon was most unclear.

He could not swear that Burks, the defendant, ever held this memorandum in his hand (R 156). Mallon said, however, he did read off the several balances at the meeting (R 157), and he stated he asked how he should handle the defendant's balances (R 157).

He seemed to stress an interest in knowing if these balances he had called off were to be put against Mrs. Burks' account, and he testified that both Mrs. Burks and the defendant said "no" (R 160); that all the defendant said was—"I will take care of my account" (R 158), and that was all he said (R 160).

Mr. Mallon conceded that when he took off the defendant's balances from the ledger cards he knew many of the items were well over three years old (R 162) and that this was not discussed with the defendant (R 163).

According to Mr. Mallon, Mr. Burks said nothing to the effect that he acknowledged all items, on the account over three years old, were still due and owing (R 165); that the defendant made no statement to the effect that he would pay all the items on his ledger card over three years old (R 165).

Mr. Mallon stated that his sole interest was to find out whether Mrs. Burks should be charged with the defendant's balance (R 164).

Defendant contends that the defendant's account had nothing to do with the purpose of the meeting or the resulting reorganization agreement, to which the defendant was not a party and in which he had no interest (Mallon, R 204). Defendantant denies (1) he had any connection whatever with these corporations after November or December of 1958

when he was fired[3] by Theodore Burton, III; (2) that he was even speaking to Theodore or Louis Burton in February of 1959; (3) that he attended any meeting, such as Mallon described, during February of 1959; (4) that he ever saw the memorandum of Mr. Mallon; and (5) that he made any statement about it. Defendant insists and argues strenuously that he didn't know there was any such claim against him until August, 1959 (Burks, R 185-190).

## THE LAW

The ledger cards cannot be accepted as evidence to prove the claims of the two corporations, based on the contention that these corporations (a) had lent and advanced money for the use of the defendant and at his instance and request; (b) paid out money for the use of the defendant and at his instance and request; and/or (c) laid out and expended money for the use of the defendant, and at his instance and request. See Title 10 *Del. C.* § 4309(a) and 1 *Woolley* 183, § 256(c); see also *Day v. Thomas*, 2 Boyce 488, 82 A. 237 (Super. Ct. 1911); *Edsall v. Rockland Paper Co.*, 8 W. W. Harr. 495, 194 A. 115 (Super. Ct. 1937) and compare *People's National Bank of Middletown v. Rhoades*, 5 Boyce 65, 90 A. 409 (Super. Ct. 1913). Considering the ledger cards as being in the nature of books of account, nevertheless under the holding of *Edsall v. Rockland Paper Co., supra*, they are not admissible since no evidence was adduced which in my mind satisfies the requirement that the entries on the ledger cards were shown to have been regularly and fairly kept in the course of business and made at or about the time the recorded transactions took place, see 8 W. W. Harr. 500, 194 A. 118.

Our statute, Title 10 *Del. C.* § 4310 permits the admission of business records,— but under certain restrictive safeguards—as evidence of an "act, condition or event".

---

[3]Theodore Burton testified that he fired the defendant late in 1958 and they were not speaking in February, 1959. (Theodore Burton, III, R 197.)

There are a number of reasons why these ledger cards are not admissible as "evidence", under the statute, of money lent and advanced, and paid, laid out and expended by the plaintiff to and for the use of the defendant, at his instance and request.

Title 10 *Del. C.* § 4309 specifically says cash items are not properly so chargeable. Certainly, the General Assembly by adopting the Uniform Business Records as Evidence Act showed no intent it was to be used to change the rule set forth in Title 10 *Del. C.* § 4309, or to repeal so much of § 4309 as made cash items inadmissible.

The plaintiff undertook to justify receipt of the ledger cards either as an aid to the present recollection, or the past recollection recorded of the witnesses, Lingo and Russell, on the Burton claim ( C. A. 264, 1959) and of Boyer on the Sales claim (C. A. 263, 1959).

A consideration of *Wigmore*, § 745—the evidential rule relating to present recollection assisted or past recollection recorded—discloses the difficulty with plaintiff's position here; the ledger cards are not evidence in and of themselves, absent the testimony of the maker of the record, in support of each item reflected thereby, all of which goes to make up the total of the plaintiff's claim.

The recorder of the Burton card was Lingo. All he could say was that he took down certain information from check stubs and/or slips from petty cash or the cash register. Someone else had put the information on the stubs and slips. Lingo was not authorized nor did he participate on plaintiff's behalf in any of the transactions reflected thereby. Theodore Burton, III, did that. His testimony does not cover this. Neither the checks, the check stubs, and/or slips were ever produced.

The recorder of the Sales card was a Mrs. Brittingham. She never testified. Mr. Boyer testified that she recorded the

information from check stubs, none of which were ever produced, nor were the checks. He may have drawn the checks but he was not authorized to participate on plaintiff's behalf in any transaction reflected thereby. Theodore Burton, III, or Mrs. Burks were vested with that authority. He merely executed their orders as Office Manager. These persons did not testify as to giving any such orders.

No witness' present memory was quickened as to any specific transaction reflected thereon so as to swear to actual recollection. No witness would swear therefrom to any such specific transaction because of his confidence in the correctness thereof. See Note at Page 533 following *Grossman v. Delaware Electric Power Company*, 4 W. W. Harr. 521, 533, 155 A. 806.

Finally, no witness testified that any debit item reflected thereby was created at the instance and request of the defendant.

So much then for the law as to that portion of the complaints dealing with the common counts of money lent, paid out, and/or advanced for the use of the defendant, at his instance and request.

Coming to the law applicable to an account stated, it is to be noted that this Court said in *Shea v. Kerr*, 1 Pennewill 198, 200, 40 A. 241 (Super Ct. 1894):

"[N]o recovery can be had under an account stated, unless there is evidence before you which satisfies your mind, by a preponderance of evidence, that there was an account stated between these two persons, in which the person said to be charged stated or admitted a certain sum to be due and owing from him to the other."

The testimony of the plaintiff's witness, Mr. Mallon, makes it very plain that the purpose of the meeting of February 5, 1959 was not a meeting between the Burton com-

panies as creditors and Mr. Burks as debtor, to arrive at an account stated as between them; the purpose of the meeting was a gathering of stockholders of the Burton companies and Mr. Mallon, representing them; the purpose of the meeting was to formulate a reorganization plan between themselves; the defendant was not a stockholder of either company. The reason mention was made of any balances due the companies was to ascertain whether Mrs. Burks would assume responsibility therefor. When Mrs. Burks said that she would not[4] recognize any balance due by Mr. Burks, the purpose of referring to such balance was served as far as the meeting was concerned.

Plaintiff never showed that the defendant at any time subscribed to the correctness of any balance on Mr. Mallon's paper or acknowledged liability for any stale items appearing therein. Nor did he make any statement that he would pay the same or any specified amount thereof or how, when or with what he would pay anything he owed the Burton companies. Assuming he was present at the meeting, the defendant said no more than he would take care of his own account; but I have never been shown, to my satisfaction, that Mr. Burks attended the meeting.

The testimony offered by plaintiff wholly failed to meet the requirements stated in *Shea v. Kerr, supra.*

### THE COURTS CONCLUSION

While these cases were being tried I was continually assailed with considerable doubt as to whether plaintiff was meeting the burden of proof. This doubt persisted after the trial was concluded. After having read the transcript and studied the briefs I am convinced now that plaintiff wholly failed in the proof of its claims.

No one testified that any executive officers of the com-

---

[4]It has not been proven Burks was present at the meeting.

panies granted any authority to make any advances or expend or pay out any money to Mr. Burks. In those instances where he conceded money had been advanced, he insisted that such advances had been repaid or made under circumstances which do not justify my finding any liability on his part to reimburse either of the companies, and no one challenged his testimony.

Neither Mrs. Burks, as Chief Executive Officer of the two companies, nor Mr. Theodore Burton, another Executive, gave any testimony which would justify my holding that Mr. Burks was liable to either or both of these companies for monies advanced, expended, or paid out. The remaining testimony given by witnesses on behalf of the plaintiff was quite inconclusive.

I, therefore, hold that the plaintiff never met the burden of proving its case; accordingly, I rule that the case should be dismissed.

I want to be specific about one point,—plaintiff never did show that Mr. Burks attended the meeting in the home of Mr. Louis Burton; and by the same token plaintiff never showed, to my satisfaction, that Mr. Burks was aware of the claims asserted against him by these suits until some date in August of 1959. Such conclusions make it unnecessary for me to consider and determine any of the other questions raised by the defendant.

An order providing for the dismissal of the case, with costs assessed against plaintiff, may be presented.

THEO. BURTON, JR., & Co., a Delaware corporation, Appellant, v. ANDREW L. BURKS, Appellee.