CHARLES G. TAYLOR & SONS, INC., a corporation of the State of Delaware, Plaintiff, v. BRENTWOOD CONSTRUCTION COMPANY, a corporation of the State of Delaware, Contractor, and MR. & MRS. MICHAEL M. MONTE BELL, owners or reputed owners, Defendants.

(*March* 14, 1963.)

LYNCH, J., sitting.

*Arthur J. Sullivan* (of Morris, James, Hitchens and Williams), for Plaintiff.

*O Francis Biondi* (of Errigo, Biondi and Porter) for Defendants, Mr. and Mrs. Michael M. Monte Bell.

Superior Court for New Castle County, No. 1089, Civil Action, 1961.

LYNCH, Judge.

Plaintiff sued in a mechanics' lien proceeding. By its statement of claim it sought to recover $969.00 from the general contractor and impose a mechanics' lien on the property of Mr. and Mrs. Michael M. Monte Bell.

 Brentwood Construction Company, the general contractor, went bankrupt and only Mr. and Mrs. Monte Bell defended. They filed an answer and excepted to the statement of claim. They asserted in their First Affirmative Defense that the statement of claim did not state a claim against them; likewise they asserted in their Sixth Affirmative Defense that the statement of claim fails "to set forth a Bill of Particulars showing the kind and amount of labor done or materials furnished as required by Title 25, *Del. C.* § 2712 (b) (4) ". Generally speaking, their answers put the plaintiff on "strict proof" of the allegations of proof.

I take up first defendants' contention that the statement of claim is defective.

Defendants point out that the statement of claim sought to enforce a mechanics' lien for materials furnished in connection with the construction of a building on the property of the defendant, Michael Monte Bell, being Lot No. 1, Block Q, Sharpley; they argue that the relevant paragraphs of the statement of claim are as follows:

"4. The materials hereafter referred to were furinshed by Charles G. Taylor & Sons, Inc. in and for the erection and construction and upon the credit of the build-

inig or structure pursuant to and upon the order of the said Brentwood Construction Company, general contractor, who had a contract with Mr. & Mrs. Michael M. Monte Bell, owners or reputed owners.

"5. The amount claimed to be due to Charles G. Taylor & Sons, Inc., is NINE HUNDRED SIXTY-NINE DOLLARS ($969.00), with lawful interest on same from June 15, 1961, and is for hardwood floors in and for the erection and construction of said building or structure and on the credit of the same. A Bill of Particulars of the kind and amount of materials furnished is annexed hereto.

"6. The time when the furnishing of materials was commenced was May 26, 1961, and the time when the furnishing of materials was finished was June 15, 1961.

"8. The materials were furnished on the credit of said building or structure."

Defendants argue there is not one word in this statement of claim indicating that any amount is claimed to be due for labor furnished by the plaintiff in connection with the construction of the building in question.

Defendants asserted Title 25, *Del. C.* § 2712(b) requires that a statement of claim seeking to establish a lien for the labor rendered to set forth the following:

"(4) The amount claimed to be due, the nature and kind of the *labor* done or materials furnished, with a bill of particulars annexed, showing the kind and amount of labor done or materials furnished;

"(5) The time when the doing of the *labor* or the furnishing of the material was commenced;

"(6) The time when the doing of the *labor* or the furnishing of the material was finished; * * *

"(8) That the *labor* was done or the materials were furnished on the credit of said structure."

Defendants further argue that the statement of claim fails to even mention "labor" and so it cannot comply with the specific statutory requirements.

All evidence admitted at the trial relating to labor preformed by plaintiff was received subject to defendants' objection; defendants urge such evidence must now be stricken from the record. Defendants' argument is along these lines: plaintiff is not entitled to a mechanics' lien for any labor furnished or for any overhead and profit; plaintiff's witness admitted that the profit and overhead item on the plaintiff's invoice had an element of labor in it; (Tr. 27, 35) and say defendants, plaintiff failed, however, to offer any evidence tending to show the amount of overhead and profit which was attributable to labor or which was attributable to materials. The conclusion advanced by defendants is that plaintiff is, therefore, not entitled to recover any portion of the overhead and profit. They say that the only claim properly before this Court is one for materials furnished.

Plaintiff notes that the Bill of Particulars attached to its statement of claim shows:

"complete contract of job ................................ $969.00
work started May 26, 1961
work finished June 15, 1961"

It is plaintiff's contention that the lien statement, as a whole, indicates that the claim is for both labor and material, and it argues the "strict construction" doctrine as to the Mechanics' Lien Statute was abandoned by our Supreme Court in *Warner Co. v. Leedom Constr. Co.* 9 Terry 58, 97 A.2d 884 (1953).

Plaintiff cites 57 C.J.S. Mechanics' Liens § 150, where it is stated:

"* * *. in determining its sufficiency, the lien statement must be construed as a whole, and an exhibit, as well as the affidavit verifying the claim, may be deemed a part of the statement for this purpose."

I agree with this statement of law and adopt it as applicable to the case at bar.

■ Defendants cite *Mayor and Council of Wilmington v. Recony Sales & Engineering Corporation*, 5 Storey 129, 185 A.2d 68 (1962) and attempt to argue from this case, and contend it gives them some comfort. In my opinion, however, it gives them no solace. I find and hold that plaintiff's statement of claim is sufficient under our present rules of pleading and that its purpose shows it was to recover for an entire contract to lay hardwood floors, which would, I am sure, include material and labor incident thereto.

■ I entertain considerable concern as to whether plaintiff properly proved its claim. It was clear that plaintiff's witness Taylor did not show an entire familiarity with the work done or otherwise comply with the usual type of proof in cases of this character. No proper testimony was offered or adduced by plaintiff in support of its statement of claim in the sense of showing what was done. The deficiencies are argued at length in defendants' brief.

Taylor testified as to the contract between plaintiff and Brentwood Construction Company but on cross examination didn't help his case and in light of defendants' its case. Primarily plaintiff relied on copies of invoices evidence I am constrained to hold plaintiff failed to prove which it says it had submitted to Brentwood Construction

Company. No effort was made to adduce its records shownig book entries on the job. Such copies of such invoices prove nothing as far as these defendants are concerned.

It may be said that the ruling of the Superior Court in and for Sussex County in the heretofore unreported case of *Theo. Burton, Jr. & Co. v. Burks,* 5 Storey 455, Super., 188 A.2d 236, released for reporting on February 19, 1963 and affirmed by the Supreme Court on February 20, 1963, 5 Storey 469 Super., 188 A.2d 243, in a per curiam opinion lends some considerable report to defendant's contentions and shows just how plaintiff failed in its proof of its case.

I rule on the case before me that plaintiff cannot recover in any amount because it did not prove its case and in particular it is precluded from recovery of those sums coming within the estoppels hereafter considered.

In the course of the case I entertained grave doubt that plaintiff had proved his case; in particular, I was never convinced by the testimony of plaintiff's witness, Kenneth T. Taylor. While on the stand Taylor's entire attitude caused me to entertain serious doubts as to credibility of his testimony, which doubts persit. He obviously didn't know his case and that tended to make his testimony incredible in some respects.

Defendants advanced a defense based on the doctrine of equitable estoppel. Their architect was suspicoius of the sufficiency and validity of a certain "receipt" furnished by the general contractor, supposedly on the letter head of plaintiff company, in the amount of $540.00 and stamped "Paid". He made a phone call to plaintiff's place of business regarding this receipt and questioned its genuineness. This architect testified his call was to plaintiff's witness Kenneth T. Taylor; that he knew his

voice and was assured by Taylor that the bill represented by the "receipt" had been paid by the general contractor. Taylor testified at the trial plaintiff was not paid the $540.00 represented by the "receipt"; that it was not one of its "receipts" and the amount was still due and owing.

The architect believed, from such call, that the plaintiff had received the money called for on the "receipt" and on such assurances the architect okayed the "receipt" and issued a certificate of payment authorizing defendants to pay a large sum of money to the general contractor, Brentwood Construction Company. I find for defendants from all the evidence on this payment.

Another incident was advanced by defendants, likewise based on the doctrine of estoppel. It involved a mechanics' lien release which was not produced at the trial.

Again the architect testified as to a conversation with this same Kenneth T. Taylor, plaintiff's witness; it was a face to face conversation at the architect's place of business.

In the course of such conversation the architect referred to a mechanics' lien release involving defendants' property; he then went on to testify concerning what was said about the release at the time.

He stated that Taylor and he had been talking about the then recent publicity involving the general contractor, Brentwood Construction Company and its bankruptcy.

The architect testified (Tr. 62):

"I said, 'I have not seen it, but I have had a number of calls this morning that they have issued a request for bankruptcy', and he [Taylor] said, 'Yes, and I haven't been paid on either the Leonard or the Monte Bell houses', and I said, 'But you have signed a release of liens on both

of them; I have seen them' and he said, 'Yes, I have signed them, but I have not signed them properly and they will not stand up'; and I said, 'To me, that sounds like fraud', and he said, 'Well, we will see about that, but they are not signed properly and they will not stand up', and he said, 'Well, I am going to lien both jobs'."

The so-called "Leonard" release of liens was produced in Court, and, on initial examination, it did seem doubtful it had been executed properly. So to that extent, the architect's version of the conversation seems to be corroborated by the appearance of the Leonard release.

Taylor, of course, denied both conversations, although he was forced to admit the "release of liens" conversation and that he had threatened (Tr. 31, 32, 33) to lien the jobs.

He fixed the conversation as taking place in June of 1961. Brentwood's bankruptcy took place on July 17, 1961. Def. Ex. No. 5-A shows that Brentwood submitted its third invoice in early July including a second payment of $210.00; this was for the hardwood flooring. The Brentwood's bankruptcy has been fixed as taking place July 17, 1961. The architect said he had only then recently paid Brentwood another large payment, including the $210 item, on the Monte Bell home—just before his conversation with Taylor, so it is unlikely the conversation was in June as Taylor insisted. Taylor's testimony on either of these two incidents was not impressive; particularly the incident about execution of the release of the mechanics' lien. First of all, he was off on his time, and secondly he conceded he had told the architect that he was going to lien the Leonard job even though he had signed the release of mechanics' lien. He admitted his company did not sue. He could give no intelligible explanation of its failure to sue (Tr. 112); except to state that a lawyer wouldn't handle the suit.

As has been noted, the name of the plaintiff was signed incorrectly on the Leonard release. The complaint avers the correct name of the plaintiff is "Charles G. Taylor & Sons, Inc.". The release was signed "Charles G. Taylor" (Tr. 119; Def. Ex. No. 7). Taylor gave no reasonable explanation for the signature of the release in this manner at trial (Tr. 119, 120, 121). The architect testified that the release in the Monte Bell job was signed in the identical fashion (Tr. 80, 89).

I am convinced that Taylor went to the architect's office on July 17, 1961, after learning of the filing of the Brentwood bankruptcy petition. He had signed releases on both the Leonard and Monte Bell jobs before receiving payment, yet he told the architect he was going to lien both jobs. When the architect told Taylor he had seen the releases with Taylor's signature on them, Taylor told the architect they were signed incorrectly and wouldn't stand up. This ruse seemed to have proven unsuccessful on the Leonard job, but since the Monte Bell release had disappeared from the Brentwood files, Taylor did not seek to rely on this ruse in this case, but elected to deny execution of the release.

Circumstances surrounding these two incidents and the general attitude of Taylor as a witness force me to reject his testimony concerning both incidents, i. e. the "receipt" for $540.00 and the release of liens.

The Court finds all the essential elements of estoppel are present in this case and that the plaintiff is not entitled to recover.

I have heretofore ruled on the doctrine of estoppel in mechanics' lien cases, particularly with reference to execution of a release of mechanics' lien, and the effective manner of executing mechanics' lien releases in the unre-

ported case of *Cromer Heating and Equipment Co., Inc. v. Brentwood Construction Company,* et al., C. A. No. 1230, 1961, decided April 27, 1962.

Since that time I have had numerous inquiries from members of the Bar as to just what was held in that case, and so I believe it desirable to make the ruling generally available.

In that case, one McManus, an agent from Cromer Heating and Equipment Co., Inc., went to the office of Brentwood Construction Co. and while there executed a release of lien covering the home there involved. Settlement was made later, based on the release. Cromer did not get its money because Brentwood went bankrupt. The authority of the agent McManus was unchallenged but instead of signing the release in the name of his employer he signed his own name. Cromer contended that made the release ineffective.

In the unreported case I said:

"Based upon testimony appearing in these pages I have no doubt whatsoever but that when McManus signed the release of liens he was signing as the agent and representative of the plaintiff corporation.

"The part about this case that troubled me was the effect to be given to the release of mechanic's liens as a corporate act, binding on plaintiff corporation, in light of the act of McManus in signing his own name rather than to have written out the name of plaintiff corporation and then signed 'by J. R. McManus'. I don't think we would have had this lawsuit had that been done.

"I am now faced with the problem—what effect should the Court give to this release of mechanic's liens signed 'by J. R. McManus' as a corporate act of the plaintiff corporation and binding upon it?

"As previously noted (1) McManus was an agent of the plaintiff corporation; (2) the testimony is all one way, i. e. that he signed as agent for plaintiff corporation, and (3) that he had authority to bind the plaintiff corporation.

"It is stated in 19 C.J.S.—Corporations—§ 1136, p. 705:

" 'As a general rule it is not essential that a corporation contract in its legal corporate name, * * *. Accordingly, a corporation may, as a general rule, in the absence of a statutory prohibition, contract under an assumed name or a name other than its legal one, provided the other party is not thereby prejudiced or injured. So, if the contract is one which the corporation is empowered to make and which it has in fact authorized to be made for its benefit but in the name of some other person or persons, it may be held liable thereon. * * *.' "

"The same principle is stated in 13 Am. Jur.—Corporations—§ 133, p. 270, and in Vol. 7, Fletcher Cyclopedia Corporations, Perm. Ed., § 3014.

"Cases applying this principle include *Milligan Coal Co. v. Polowy*, et al., [108 W.Va. 458] 151 S.E. 429, 431 (Sup.Ct. of Appeals, West Va., 1930)—'* * * any * * * corporation may bind itself by a contract made under a name other than [its] own. * * *.'; *General Motors Acceptance Corp. v. Haley*, [329 Mass. 559] 109 N.E.2d 143, 147 (Sup.Jud.Ct., Mass.1952)—'It is well settled that a * * * corporation may assume * * * different names, and contract accordingly, and that contracts so entered into will be valid and binding if inaffected by fraud. * * *. The validity so far as third parties are concerned, of contracts entered into by a * * * corporation under a name other than * * * its own name does not depend upon whether * * * it is well known by that name as by

\* \* \* its true name but upon whether quoad the particular transaction, the name is used in good faith by the party adopting it as a descripto personae.'

"*Freeport Journal-Standard Publ. Co. v. Frederic W. Ziv Co.,* 345 Ill.App. [337] 103 N.E.2d 153, (1952) presents an excellent illustration of the applicability of the principle. It involved a transcription lease between the parties to the litigation. In its execution the lease was signed:

" 'WFJS Commercial Manager,
 Lessee
 Address 215 W. Exchange St.,
 Freeport, Ill.
 by Paul E. Sammon

" 'Frederic W. Ziv Company
 1529 Madison Road
 Cincinnati 6, Ohio
 by Frederic W. Ziv' "

"It was shown at the trial that Freeport Journal-Standard Pub. Co. owned and operated Radio Station WFJS under that name; that Paul E. Sammon was the Commercial Manager of WFJS and he was authorized to execute leases of the character involved in the litigation. The Trial Court held the lease was a corporate obligation of appellant.

"In sustaining the Trial Court, the Illinois Court of Appeals ruled (103 N.E.2d at page 157):

" 'The initial question to consider is whether or not the transcription lease giving rise to this litigation is a corporate document. The general rule is that a contract by a corporate officer or agent need not be made and signed in the name of the corporation to render the corporation liable thereon, if it was the intention of the parties

to bind the corporation. * * *. It seems clear to us then that when Radio Station WFJS is referred to in the lease as the lessee, that appellant is bound to recognize the name which it holds out to the public in connection with the enterprise that it is operating. A reading of the lease shows that it was clearly the intention of Commercial Manager Sammon and appellee that the lease be binding on WFJS and appellee, and since appellant was operating the radio station under that name, appellant was in fact the real lessee. Every provision in the lease negatives the interpretation that Sammon, as an individual, was to be bound. * * *. In determining whether it is the intention of the parties to bind the corporate principal or to bind the purported agent individually, all of the facts and circumstances surrounding the making of the contract are properly considered by the court. * * *. Appellant has cited the cases of *Stobie v. Dills,* 62 Ill. 432, *Sheridan v. Pease,* 93 Ill.App. 219, *Mears v. Morrison,* 1 Ill. 223, and *Sperry v. Fanning,* 80 Ill. 371, as holding that before a corporation can be found on a written instrument, the corporation's name must be used on the face of the instrument and that its name must be used in the signing of the instrument by an authorized officer or agent. We have read these cases and do not find that they sustain this proposition.' "

The ruling in the Cromer case is, under the facts found by me in the case at Bar, wholly applicable and controlling and is dispositive of the case. The facts then in the case at Bar that the release of mechanics' lien was signed "Charles G. Taylor"—rather than in its proper corporate name—is of no significance. It stands conceded that the witness Taylor signed the "Leonard" release in the manner noted; that he was authorized by plaintiff to sign releases of mechanics' liens; and the fact he signed the two releases considered by the Court individually

rather than is usually done by a corporation is of no significance. The release was the corporate act of plaintiff and as binding on it as if it had been signed in the usual manner.

█ The defendants, owners of property involved in the Cromer case, pleaded and relied on principles of estoppel, which I applied. I hold these same principles are likewise applicable here. I entertain no doubt but that if the representations, conduct or actions of a contractor, sub-contractor, a laborer, or a materialman are such as to lead an owner of a building to believe all construction costs have been paid and nothing is due and owing on the building, the principles of estoppel apply, and if proved, can bar recovery in a mechanics' lien proceeding.

An order providing that judgment be entered for defendants may be submitted.