LUCY K. PEABODY, PLAINTIFF IN ERROR, *v.* S. M. DAMON, J. O. CARTER, W. F. ALLEN, CHARLES M. HYDE AND W. O. SMITH, TRUSTEES UNDER THE WILL OF B. P. BISHOP, DECEASED, DEFENDANTS IN ERROR.

ERROR TO CIRCUIT COURT, FIRST CIRCUIT.

ARGUED JANUARY 10, 1905.     DECIDED JANUARY 30, 1905.

FREAR, C.J., HARTWELL AND HATCH, JJ.

EJECTMENT—*equitable estoppel by silence—motive for silence.*

Plaintiff claimed the land sued for as one of the heirs at law of Charles Kanaina. Upon the administrator's petition in 1879, alleging payment of debts and that certain persons decreed to be heirs were unable to agree on partition, but that the majority desired a sale at public auction, and praying for an order of notice calling upon all interested to appear and show cause and that the lands be sold, order was made accordingly and the property was sold at auction. The land in question was bought by Ruth Keelikolani. Her devisee, Bernice Pauahi Bishop, devised the property to five trustees and their successors, defendants being four of the present trustees. The plaintiff knew of the proceedings above mentioned, of the opportunity to present her claim, of the advertisement and the day the sale would take place and of the sale that was made; also that she was related to the decedent. She made no claim because of instructions from her grandmother that she should not set up her pedigree as in any way connected with the Kamehamehas. She told no one about her claim, and after the death of the royal princesses Ruth and Pauahi she thought no more of the matter until informed that all of the claimants of the estate were going to be shut off. She did not intend to deceive or mislead anyone. Upon defendants' motion the court directed a verdict for them on

the ground that the facts showed that the plaintiff was equitably
estopped from bringing this action. Held: The verdict was prop-
erly directed, the plaintiff having had "the opportunity and appar-
ent duty to speak," and that her silence under the circumstances
equitably estops her from now presenting her claim; also that her
motive for not presenting her claim was immaterial, the conse-
quences being the same as if she had intended that her silence
should lull those concerned into a sense of security.

ID., PRACTICE—*question of law.*

Held: The question of estoppel in this case was not for the jury
but for the court, there being no facts in controversy and no uncer-
tainty as to inferences to be drawn from them, following Smith
v. Hamakua Mill Co., 15 Haw. 655.

## OPINION OF THE COURT BY HARTWELL, J.

The plaintiff in error brought an action of ejectment against
the defendants in error which was tried in the circuit court of
the first circuit. At the close of the evidence the defendants
moved that a verdict in their favor be directed on several
grounds, including equitable estoppel. On this ground alone
the motion was granted. The error assigned is that "the court
erred in having against plaintiff's objection directed the jury to
render a verdict against the plaintiff and in favor of the defend-
ants." The defendants in error contend that the three grounds
of their motion on which the court did not pass were good, and
that if any one of them is sustained the writ of error ought to
be dismissed. The conclusion which we have reached on the
question of estoppel renders it unnecessary to consider this con-
tention.

The plaintiff in error claimed the land in controversy by
devise from one Kahookulimoku, claimed by her to have been
one of the heirs at law of Charles Kanaina, who died intestate in
Honolulu March 13, 1877, leaving no widow, child, grandchild,
parent, brother or sister. There was litigation over the Kanaina
estate from 1877 to 1881. A proceeding was brought by certain
claimants under Kanaina's maternal grandmother, Moana, and
her four husbands, under the act of 1874, to quiet land titles,

resulting in an adjudication of heirs. *Kalakaua v. Parke, 8* Haw. 623. In a later proceeding the act of 1874 was held to be unconstitutional, and a new decree of heirship was made. *Est. of Kanaina, Ib.* 627. In December, 1879, W. C. Parke, administrator of the estate, filed his petition alleging payment of debts, that the real estate remained in his charge, and that certain heirs who had been decreed to own it were unable to agree on a division, but that a majority desired a sale by public auction, praying that an order of notice be published in the English and Hawaiian languages calling upon all interested to appear and show cause and that the lands be sold. An order was made accordingly, the property was sold at auction, the piece in question being bought by Ruth Keelikolani. Her devisee, Bernice Pauahi Bishop, devised the property to five trustees and their successors, the defendants being four of the present trustees. The case as presented by the evidence is as follows: The plaintiff testified that she was living with Queen Emma when Kanaina died; that she knew there was an opportunity for relations to put in their claims to his estate, that the claimants were called to come in and she knew this because it was a matter of importance in those days; that the making of the claims and the disposition thereof were matters of great notoriety; that the matter was known throughout the whole kingdom; that she was well acquainted with all the judges and with the administrator, W. C. Parke; that the trial itself was well known in Honolulu, that she was in Honolulu at the time and heard of the decision, that she remembered Princess Ruth as a claimant and also many other claimants that appeared; that the matter was one of great notoriety because Kanaina held a large estate; that she knew of the sale and that the same was advertised all over the city; that the sale was a matter of great notoriety and publicity; that she knew from the newspapers the day the sale would take place; that she knew at the time of the sale that she was related to Kanaina; that she made no claim because of the instructions of her grandmother that she was not to set up her pedigree as in any way connected with the Kameha-

mehas, but now they were dead she was coming in to claim her rights; that it was through Princesses Ruth and Pauahi Bishop that the Kamehamehas were connected with the matter and she was not going to set up her claim against theirs; that she told no one about her claim; that after the death of Ruth and Pauahi she thought no more of the matter until informed that all the claimants of the estate were going to be shut off; that her relaions with Ruth and Pauahi were of a most intimate character; that they had known each other for a great many years; that it was from no fear of Ruth's displeasure or punishment that she did not set up her claim but simply of the admonition of her grandmother that she never told Ruth of her claim; that she made no claim at the hearing; that she did not stop others from making claims but kept hers to herself; that she kept her claim from Ruth because she did not want to set it up against her; that she kept silent on account of the chiefs, (referring to Ruth and Pauahi); that if these chiefs had made no claim against the estate of Kanaina she would certainly have put in her claim, that her conduct was out of respect to those two chiefs, that she knew others had claims to the estate and the relation of all such parties to Kanaina; that her action in regard to not presenting her claim was taken "deliberately, knowingly;" that the heirship to the Kanaina estate was a matter of general talk in those days; that she never informed Ruth of her grandmother's admonition; that it was a rule among Hawaiians that those on a lower level should not set up their relationship to those in higher places; that her reason for finally bringing suit was that she heard that the doors were to be shut; that she then brought suit against many persons, and that she thought nothing about the purchasers at the Kanaina sale and how they would suffer. The plaintiff in her testimony emphatically denied that she intended to deceive or mislead anyone or that other claimants should act without knowledge of her claim. "I did not intend Ruth to infer from my conduct that I was not a claimant. I did not intend that she should infer or not infer, but I simply did not want to set up my claim against hers." The defendants contend that the plaintiff's silence

under all the circumstances equitably estops her from bringing this action. The plaintiff does not question that the defense may be made in an action at law but she denies that equitable estoppel is shown, and claims that at any rate there was uncertainty whether the evidence showed all the elements of estoppel and therefore that the question ought to have been left to the jury. Where evidence is "capable of more than one construction" or of "more than one inference, the jury alone is to determine the meaning to be conveyed, and the inference to be drawn from facts proved where more than one inference may be so drawn reasonably." Perry, J., in *Smith v. Hamakua Mill Co.,* 15 Haw. 655. The rule so stated certainly goes as far as the plaintiff can reasonably ask; but the case has no facts in controversy, no uncertainty as to inferences to be drawn from them. The fact that Ruth Keelikolani and Pauahi Bishop were acquainted with each other and knew each other as kindred of Kanaina does not authorize the inference that either of them knew that the plaintiff was related to him in the remote degree claimed by her. Moreover, the plaintiff would not have hesitated to state her claim to them if they had known or supposed that she was related to the intestate. Coming then to the principal question in the case, namely, whether the plaintiff's conduct was such as to constitute in law a case of equitable estoppel. The plaintiff refers to the elements which are often considered requisite, namely, misrepresentation or concealment of a material fact made to one ignorant of it with the intention that the other should act upon the misrepresentation or concealment, and should thereby have been induced to act. Certainly the plaintiff had no thought to keep back her claim until after years should see such changes that she could make her claim without disrespect of the chiefs; but the consequences to the chiefs and to those who have succeeded them in the supposed ownership of this property were precisely the same as if the plaintiff had intended that her silence should lull them into a sense of security. The royal princesses, Ruth Keelikolani and Pauahi Bishop, were equally with the plaintiff under the law of the land. They were

as much entitled as any other persons under similar circumstances to be informed seasonably, if ever, of the plaintiff's claim to land which they believed to be their own. The plaintiff's reticence cannot be regarded in any other light than it would be regarded if she had entertained no scruples on the subject of making her claim known. If she had presented her claim seasonably, when cotemporaries of Kanaina were living who could have testified concerning his kindred, evidence might have been forthcoming which is not now available which would have shown that she was not within the inheriting degree of kindred. The doctrine of estoppel "is often applied where one owning an estate stands by and sees another erect improvements on it in the belief that he has the title or an interest in it, and does not interfere to prevent the work or inform the party of his own title." *Steel v. Smelting Co.*, 106 U. S. 456. Fraud or fraudulent intent is not a necessary element of an estoppel. "There are undoubtedly cases where a party may be concluded from asserting his original rights to property in consequence of his acts or conduct, in which the presence of fraud, actual or constructive, is wanting; as, where one of two innocent parties must suffer from the negligence of another, he through whose agency the negligence was occasioned will be held to bear the loss." *Brant v. Va. Coal Co.*, 93 U. S. 336. "If, whatever a man's real intention may be, he so conducts himself that a reasonable man would take the representation to be true, and believe that it was meant that he should act upon it, and did act upon it as true, the party making the representation would be equally precluded from contesting its truth; and conduct, by negligence or omission, when there is a duty cast upon a person by usage or trade *or otherwise* to disclose the truth, may often have the same effect." *Freeman v. Cooke*, 2 Exch. 654, 663, cited with approval in *Leather Mfgs'. Bank v. Morgan*, 117 U. S. 108. "Culpable" silence which permits another to believe in the existence of a state of things which does not exist "always presupposes error on one side and fault or fraud upon the other and some defect of which it would be inequitable for the parties

against whom the doctrine is asserted to take advantage." *Morgan v. R. R. Co.,* 96 U. S. 720. That was a case in which the plaintiff's land had been used for a railway station to the plaintiff's knowledge, although he made no objection. The court held that his silence was "culpable" and estopped him from claiming the land. In *Kirk v. Hamilton,* 102 U. S. 68, a trustee's sale of land had been ordered by the court, which the plaintiff claimed was invalid. The plaintiff had appeared in the proceedings but had not objected to the validity of the sale. The court held that the sale might have been a nullity, but that the plaintiff had by his conduct indicated his purpose not to object to it, and that his silence when improvements were afterwards placed upon the land estopped him from claiming that the sale was invalid.

The plaintiff claims that "the action of the administrator in the sale of the real estate of Charles Kanaina, deceased, for the purpose of distribution of the proceeds amongst the heirs, was illegal and void. By virtue of such illegal act 'no relation' could spring into existence between the administrator and plaintiff in error acquiescing therein." Numerous cases are cited by the plaintiff to sustain this claim, e. g. :

(1) In *Viele v. Judson,* 82 N. Y. 32, the court, after saying that in estoppel by silence "the silence operated as a fraud and actually itself misled. In all there was both the specific opportunity and *apparent duty to speak;* and, in all, the party maintaining silence knew that some one else was relying upon that silence, and either acting or about to act as he would not have done had the truth been told," decided that the case showed that "nobody relied on his" (the plaintiff's) "silence or was misled by it."

In *Rubber Co. v. Rothery,* 107 N. Y. 310, the parties owned on opposite sides of a stream. The defendants' factory, which they were building upon their own land, was to be supplied with water from the stream through a race from a point above. The opposite owner saw that the defendants were building the race and factory, knew that the race was being made in order to take

water from the stream to the factory and did not object. It was held that this silence did not authorize presumption of a grant or license; that the owner had not led the defendants into making the outlay "on any assumption that they had the right to do it when in truth they had not," and that even if the defendants had no right to dig the mill race and let the water into it and thus possibly divert the water from the stream, the owner of the adjoining land was not bound to interfere or protest; that her simple knowledge that the defendants were thus engaged "did not require her to object under penalty of the loss of her legal rights" *under the pretense that the defendants "did not know their title and their rights quite as well as she.* She was simply passive and failed to object to defendants doing what they did. In cases of silence there must be not only the right but the duty to speak before a failure so to do can estop the owner. There was no such duty here."

In *Taylor v. Ely,* 25 Conn. 250, the court held that defendants' refusal to inform the plaintiff concerning the state of their accounts with a third person with whom the plaintiff was dealing did not estop them from afterwards showing that the other person was indebted to them, saying, "To make the silence of a party operate as an estoppel, the circumstances must be such as to render it his duty to speak."

*Farist's App.,* 39 Conn. 150, held that a party was not estopped from presenting a claim against an intestate estate by having assented to a statement by the widow of the intestate that there were no debts against the estate, although *he would have been estopped if she had told him that she was thinking of buying* some land belonging to the estate, and that this was the reason why she wished to know whether there were claims against it.

In *Evans v. Snyder,* 64 Mo. 517, the defendants claimed in ejectment under an administrator's sale, both parties claiming from the intestate. The probate record showed that there was "no order authorizing the sale." Defense was made that the proceeds of the sale had been used in relieving other lands which

the plaintiffs still retained free from debt. The court held that "this latter circumstance, *although the sale was void,* created a clear equity in favor of defendants."

*Simmons v. Taylor,* 23 Fed. 849, holds that "estoppel implies that the party has done or omitted to do that which *under the circumstances* he was legally or *morally* bound to do or omit doing."

Silence may be interpreted as assent if one "is silent in the face of *facts which fairly call upon him to speak." Day v. Canton,* 119 Mass. 518. Mere silence does not create estoppel unless there was some obligation to speak or duty to speak. The plaintiff's conduct was "within his legal rights and *any inference which the appellant might draw therefrom* would not estop the plaintiff from asserting his rights." *Newhall v. Hatch,* 66 Pac. 266. An administrator of two different estates, after having reserved amounts deemed sufficient to pay the debts in one estate and deducting what was owed to that estate by the other, found that there were $6,000 due to the first estate from the second. He divided that sum in the second estate between the mother and five children. It was afterwards learned that according to law the mother should have received the whole amount, for which she then sued the administrator. His answer was payment as above and that the assets he then held were worthless confederate notes. The court held that the acquiescence of the mother in the payment to her children did not bind her; that a mistake had been made by the administrator; that the mother was under no obligation to inform the administrator as to the law "and her failure to instruct him as to his duties is no breach of any duty on her part. * * * She stood by and said nothing, made no objection *simply because she did not know she had any right to object." Davis v. Bagley,* 40 Ga. 181, 2 Am. Rep. 570. "It cannot be that A would be estopped by silence with respect to his title to property which B is about to purchase, *when he has no knowledge that B contemplates buying and B has no knowledge* that A is connected with the property. We know of no case holding that a man is estopped by silence as against the

public, or any particular person with whom he has no fiduciary relation." *Wiser v. Lawlor,* 189 U. S. 260.

None of the foregoing cases go to the extent claimed by the plaintiff. We have italicized in order to draw attention to certain features in the cases, which require no further comment. In some instances the court apparently states the doctrine of estoppel in pais more broadly than is required or justified by the facts, illustrating the difficulty of laying down "any determinate legal test which will reconcile the decisions or will embrace all transactions to which the great principle of equitable necessity wherein it originated demands that it shall be applied." *Preston v. Mann,* 25 Conn. 127. Under all the circumstances of the present case, including a public sale under semblance or color of right by judicial order, the plaintiff, knowing that the sale was so ordered and when it would take place, and that she had an opportunity and the right to present her claim at the time, there were "both the opportunity and *apparent* duty to speak."

The defense of estoppel is sustained and the writ of error is dismissed.

*E. C. Peters* for plaintiff.

*Kinney, McClanahan & Cooper; S. H. Derby* and *Holmes & Stanley* for defendants.