MAX M. BROIDA, Trustee for BROIDA PROPERTIES, LTD., a dissolved corporation *v.* FRANK KENSO HAYASHI, ET AL.

No. 4739.

JANUARY 14, 1970.

RICHARDSON, C.J., ABE, KOBAYASHI, JJ., CIRCUIT JUDGE M. DOI IN PLACE OF MARUMOTO, J., DISQUALIFIED, AND CIRCUIT JUDGE KABUTAN IN PLACE OF LEVINSON, J., DISQUALIFIED.

OPINION OF THE COURT BY RICHARDSON, C.J.

Broida Properties, Ltd., sublessor, sued to recover unpaid rent from its sublessees, Frank and Helen Hayashi,

under an express covenant to pay rent. From a judgment in favor of the Hayashis, Max M. Broida, trustee for the dissolved sublessor corporation, appeals.

The following facts are pertinent: On August 9, 1954 Industrial Investment Co., Ltd. subleased income producing property to the Hayashis. In 1955, Industrial assigned its interest to Broida Properties. On June 8, 1955, the Hayashis assigned their leasehold estate to Obed and Mildred Hanuna with the consent of Broida Properties, as required in the lease. The Hanunas assumed all covenants under the lease.

In 1956, the Hanunas assigned the leasehold estate to Mrs. Park and Mr. Lim, subject to a mortgage created by the Hanunas held by International Savings and Loan Association. Broida Properties collected rent from the Hanunas and their successors in interest. Mrs. Park and Mr. Lim failed to make payments for real property taxes, street assessments and rent after November 1960. In March 1961 Broida Properties informed the Hanunas of the default in rent payments and Mr. Hanuna gave assurances that the rent would be paid. On June 5, 1961, Broida Properties informed International Savings and Loan Association of its cancellation of the sublease. On June 19, 1961, Mr. Hanuna, since divorced from Mildred Hanuna, conveyed land owned by him to Grayce Wong. On August 15, 1961, appellant Broida Properties brought suit against the Hanunas for rent owing from November 1960-July 1961. After Mr. Hanuna's death in November 1961, his former wife Mildred received proceeds of a life insurance policy on Mr. Hanuna. Appellant Broida Properties filed a claim against the estate but did not attempt to reach the conveyance to Grayce Wong. Appellee admits that appellant had no knowledge of the receipt of life insurance proceeds by Mrs. Hanuna. On April 15, 1966, the suit against the Hanunas was dismissed for

want of prosecution. On February 15, 1963, the Hayashis were notified of their liability for rental payments owing from November 1960 to July 1961 and suit was brought by Broida against the Hayashis on December 18, 1963.

The general rule is that unless otherwise expressly or impliedly agreed, the original lessee remains liable on privity of contract to the lessor after an assignment even though the assignment is assented to by the landlord. 3 Tiffany, *The Law of Real Property* 535 (3d ed. 1939), *Samuels* v. *Ottinger,* 169 Cal. 209, 146 P. 638 (1915). We turn to the writings and conduct of the parties to determine whether they intended to vary the effect of such a general rule.

## I.

To gather the probable intent of the parties, we must interpret the lease as a whole and interpret writings of the same transaction together. *Tsunoda* v. *Young Sun Kow,* 23 Haw. 660 (1917), *Territory* v. *Arneson,* 44 Haw. 343, 354 P.2d 981 (1960).

The lease requires that consent of the lessor be obtained in case of a subletting, assignment, or mortgage of the premises by the lessee but expressly reserves rent only in the case of a subletting. Appellees contend that the express reservation of rent in the event of a subletting and not in the event of an assignment releases them from the obligation to pay rent. Appellant argues that under appellees' construction, the mere mortgaging of the premises would also release appellee from the obligation to pay rent. Clearly, we cannot apply the rule of *expressio unis est exclusio alterius* without defeating the primary purpose of the lease. Were we to apply that rule, the lease would be of no value to the lessor at the lessee's option.

Nor do we find applicable the general rule of construction that where the lease is drawn by the lessor, its

language will be construed most strongly against him. The lease provisions are not ambiguous and we have said that the rule will not be applied where there is no ambiguity. *Territory* v. *Arneson, supra.*

In construing a lease we must avoid an unreasonable interpretation if that can be done consistently with the tenor of the agreement and choose the most obviously just interpretation as the presumed intent.

Appellee construes the express reservation of rent as a precautionary measure for the benefit of the lessor in case of a subletting. Accepting that interpretation does not lead inevitably to the conclusion that Broida intended to release the Hayashis on their contractual obligation to pay rent after an *assignment.* The continuing liability of the Hayashis in case of subletting was merely declaratory of a rule of law. Privity of estate and privity of contract continue between the lessor and the lessee after a further subletting by the lessee unless there is a surrender of the lease or substitution of tenants. *Sinberg* v. *Davis,* 285 Pa. 426, 132 A. 287 (1926). We find that Broida could not have intended to reserve rent only in case of a subletting but meant by the reservation only to expressly incorporate a well-established rule of law in the lease. We must assume the parties intended general rules of law to apply to an assignment as well as to a subletting. Selective incorporation in a lease of certain rules of law cannot of themselves generate exceptions to other rules which have enjoyed general acceptance in the law especially where such exceptions read in light of the lease as a whole would obviously lead to an unreasonable interpretation.

We find further support for the proposition that the Hayashis were not discharged from their liability to pay rent after the assignment to the Hanunas in the instruments of assignment and consent to assignment.

By the terms of the assignment the Hanunas expressly covenanted with both Broida and the Hayashis to assume all obligations under the lease. Without an affirmative acknowledgment to the contrary by the lessor, the lessee is not relieved of his contractual obligations under the lease even when the assignee of the lessee expressly assumes obligations of the lessee owing to the primary lessor under the lease. *Peiser* v. *Mettler,* 50 Cal. 2d 594, 328 P.2d 953 (1958).

If termination of liability owed Broida by the Hayashis were intended, there would hardly have been reason for the Hanunas to covenant with the Hayashis as to duties under the lease. A substitution of tenants or release would have made the Hanunas solely liable on the lease and terminated all obligations and interests of the Hayashis under the lease. An assignee who covenants with the lessee to perform all the obligations in the original lease is liable to the lessee on privity of contract. *L. P. Courshon Co.* v. *Brewer,* 215 Iowa 885, 245 N.W. 354 (1932). By the terms of the instrument of assignment the Hayashis contemplated the possibility of future liability to Broida and their potential recovery over against the Hanunas.

Appellee contends that the term "sublessees" in the consent instrument refers to assignees and evidences Broida's intent to substitute the Hanunas for the Hayashis under the lease.

The term "sublessees" is clear and unambiguous and cannot be construed to mean assignees. The original lease, of course, passed to the Hanunas, but that did not make them sublessees. The instrument of assignment referred to the Hanunas as "assignees" and we may assume that Broida, executing the consent instrument a month later and acknowledging the Hanunas as parties to the "Assign-

ment" did not intend to expand the term "sublessees" to include assignees of the lease.

## II.

Finding no evidence of release in the writings between the parties, we turn to evidence of other conduct.

We cannot infer, as appellee urges, that the suit instituted against the Hanunas by Broida in August 1961 was based on Broida's mistaken assumption that the Hanunas were solely liable on the lease. Clearly assignment by the Hanunas to Mrs. Park and Mr. Lim severed privity of estate between the Hanunas and Broida, but the Hanunas were still liable on their contractual undertaking. Where an assignee personally agrees to perform the obligations under a lease owed by the lessee to the primary lessor he continues to be liable to the primary lessor on his contractual obligations even after he has made a further assignment and vacated. *Euler* v. *Kessler*, 156 Kan. 104, 131 P.2d 907 (1942), *Dwyer* v. *Lavigne*, 319 Mass. 26, 64 N.E.2d 356 (1946).

Broida properly brought suit against the Hanunas on their contractual undertaking. We cannot draw an inference adverse to a party's interest from an act the party had every right to do. The record does not show, nor may we presume that the course of remedies chosen by appellant was improper or in bad faith.

## III.

Appellant does not urge upon us any affirmative acts from which a release may be inferred, but asks that the court apply the equitable doctrine of estoppel in pais to this case.

We may at the outset dispose of appellees' contention that appellants had a duty to give them notice of cancel·

lation of the lease. Notice either personal or constructive, was required of the lessor, under the terms of the lease. Notice, as a condition to re-entry, was intended to warn the party in possession of the lessor's exercise of his right of re-entry. The duty was not owed to the Hayashis who were no longer in possession and in the absence of affirmations by Broida to the contrary, the Hayashis could not have relied to their detriment on notice of cancellation.

The sum of appellees' plea for equitable relief is that appellant's failure to give prompt notice of default in rental payments by Mrs. Park and Mr. Lim prevented appellees from reaching the real estate conveyance by Mr. Hanuna and life insurance proceeds received by Mrs. Hanuna in part satisfaction of appellees' liability to appellant. We have said that " 'In order to [have] an estoppel by conduct, there must have been a representation or concealment of material facts, known by the party to exist, and with the intention of inducing a party, ignorant of the facts, to act upon the representations.' . . . [E]stoppel by conduct is not present where the truth is known to both parties or where they have equal means of knowledge." *Molokai Ranch, Ltd.* v. *Morris,* 36 Haw. 219, 223 (1942).

The Hayashis remained liable on the lease. There is no evidence that they were precluded by the conduct of the appellant from material facts which were equally available to them. In fact there is good reason to believe that the material facts were easily within access of the appellees. Mr. Hayashi testified that he knew that Mrs. Park rather than the Hanunas had begun collecting rents in 1960 or 1961 and counsel has admitted that appellees "vaguely knew" of the conveyance from the Hanunas to Mrs. Park and Mr. Lim.

Appellees are experienced business persons dealing with income producing property. At the time of their

lease and at the time of suit they had other property interests in the immediate vicinity and directly across the street from the property in issue here.

The record is devoid of evidence of conduct by Broida intended to conceal material facts which were not obtainable by the Hayashis. If the Hayashis labored under a mistake of their legal duties, they cannot obtain relief to the detriment of a party who has construed his duties correctly.

The fact that the Hayashis were notified by the lessor of delinquencies in the rent approximately a year and a half after they fell due does not resound to their prejudice.

Appellee agrees that there is no duty in landlord-tenant law requiring the lessor to notify the lessee at any time of any default in rental payments by the lessee's successors in interest. That contingency may be provided for by contract but was not done so here. We have said that "[s]ilence may be interpreted as assent if one 'is silent in the face of *facts which fairly call upon him to speak.'* . . . Mere silence does not create estoppel unless there was some obligation to speak or duty to speak . . . ." *Peabody* v. *Damon,* 16 Haw. 447, 455 (1905). There being no duty to speak, silence itself will not raise estoppel.

Under similar facts the Minnesota Supreme Court said, "Complaint is made of the exclusion of defendant's offered proof of plaintiffs' failure to keep him informed [of defaults in rental payments] and what 'defendant would have done in 1927 had he known of the delinquencies in the payment of rent and taxes.' . . . Neither the lease, nor the law otherwise, imposed any such duty on plaintiffs. They did nothing affirmatively to prejudice defendant's rights and are not to be deprived of their own because of their failure to perform a duty not imposed

upon them either by law or contract." *Wilcox* v. *Hedwall,* 185 Minn. 8, 14, 239 N.W. 763, 766 (1931).

The basis for continuing liability of the original lessee is privity of contract which may, unless contracted otherwise, result in foreseeable financial responsibility. We do not find this case a proper one for the application of estoppel in pais.

Reversed.

*Hiram Fong, Jr.* (*Barry Chung* on the brief, *Fong, Miho, Choy & Robinson* of counsel) for plaintiff-appellant.

*Ton Seek Pai* (*Okumura & Takushi* of counsel) for defendants-appellees.