RELIABLE COLLECTION AGENCY, LIMITED, an Hawaiian corporation, Plaintiff-Appellee *v.* AQUARIUS INDUSTRIES, INC., Defendant, ROBERT E. WETZEL and LINDA V. WETZEL, Defendants-Appellants

NO. 5542

APRIL 30, 1975

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR, JJ., and KATO, Circuit Judge, for the vacancy

OPINION OF THE COURT BY RICHARDSON, C.J.

The defendants Wetzels appeal from a judgment of the First Circuit Court which decreed that plaintiff has a valid mechanic's and materialman's lien against the defendants Wetzels' leasehold interest in their Kailua home, and awarded plaintiff Reliable Collection Agency $965.74 against defendant Aquarius Industries.

The trial court found that on or about February 25, 1972, Pacific Concrete and Rock Co., Ltd. (hereinafter Pacific Concrete), furnished 28 cubic yards of gunite worth $806.56, to defendant Aquarius Industries for the construction of a swimming pool on the Wetzels' leasehold property. On July 25, 1972 Pacific Concrete assigned its claim to plaintiff Reliable Collection Agency.

Notices of completion of the swimming pool were filed on September 2, 1972 and September 15, 1972. Plaintiff filed notice of mechanic's lien and demand on October 4, 1972, and served the notice as required. Plaintiff filed the complaint to enforce the lien on December 8, 1972. Judgment enforcing the lien was rendered on July 12, 1973.

In addition, the record illuminates the relationship between Pacific Concrete and Aquarius Industries.

Pacific Concrete started supplying Aquarius with gunite in February 1971, and from that time through March 31, 1972, Aquarius did about $12,500 of business per month with Pacific Concrete ($10,035 per month arithmetic average) with the extremes per month being $1,826 and $23,611.

Early in 1971, Neudeck Pools, Inc., a corporation for whom Aquarius was subcontracting, warned Pacific

Concrete's credit manager to keep Aquarius on 10 to 14 day credit. In June of the same year Pacific Concrete received a request from Progressive Construction, another general contractor for whom Aquarius was subcontracting, for notification of any delays in payment by Aquarius on its account with Pacific Concrete.

Aquarius defaulted on its September 1971 bill of about $12,500 from Pacific Concrete and resumed substantial payments in October 1971, but this left Aquarius a month behind in its payments. For example, the billing for November 1971 was paid by Aquarius in January 1972. Aquarius defaulted completely on its bills for December 1971, January 1972 and February 1972, for amounts of $7,821, $6,977 and $1,826 respectively. On February 14, 1972, Pacific Business News published a notice of a state tax lien against Aquarius which had been filed earlier that month. On February 24, 1972, Pacific Concrete delivered the gunite to Aquarius for building the Wetzels' pool. On February 25, 1972, Pacific Concrete notified Progressive Construction that Aquarius was falling behind in its payments. By early March 1972 at the latest, Pacific Concrete was aware of the tax lien and tightened Aquarius' credit by putting Aquarius on a C.O.D. basis. The C.O.D. was actually a "one week C.O.D.," meaning Aquarius had only one week's credit. In March 1972 Aquarius started paying on specific invoices instead of on open account.

In late March 1972 the Wetzels' pool was completed by Aquarius. The Wetzels paid Aquarius for the pool shortly thereafter.

Despite the above warnings of Aquarius' financial difficulties, on April 26, 1972 and May 2, 1972, Pacific Concrete supplied gunite to Aquarius for new pool projects, projects on which liens were eventually imposed by Pacific Concrete despite full payment to Aquarius by the pool owners.

Around May 2, 1972 Pacific Business News published notice of a federal tax lien. On May 4, 1972 Aquarius' creditors met presumably to discuss their debtor's situation and future payments, but in mid-May 1972 the Internal Revenue

254

Service shut Aquarius down for failure to pay taxes. Pacific Concrete was still supplying Aquarius with gunite when it was shut down because Aquarius was still paying weekly on a C.O.D. basis.

Pacific Concrete never informed any property owners who contracted with Aquarius of Aquarius' financial difficulties, and Pacific Concrete ultimately imposed 20 to 30 liens on various projects because of Aquarius' insolvency.

While Pacific Concrete maintained a credit manager of 14 years' experience who had responsibility for extending credit and collections, and while the interchange of information was very common among credit managers, the defendants Wetzels were in a vastly different situation. Despite his education and experience, Mr. Wetzel was unaware both of the law and of Pacific Concrete, just as the public generally is acknowledged to be unaware of mechanic's and materialman's liens.

Defendants Wetzels argue that given Aquarius' known financial difficulties, Pacific Concrete's failure to warn the defendants (and thus to allow the defendants an opportunity to protect themselves) equitably estops Pacific Concrete, and its assignee Reliable Collection Agency, from enforcing the lien.

Equity is clearly relevant in mechanics' lien cases. As this court noted in *Shelton Engineering v. Hawaiian Pacific Industries*, 51 Haw. 242, 247-248, 456 P.2d 222, 226 (1969), referring to HRS §§ 507-41 to 507-48, "The law was intended to compensate a person equitably, and was never intended to operate in a manner which might enable the subcontractor to recover twice or to oppress the defendants to his claim." This court has previously passed on other estoppel questions involved in mechanics' lien cases. Also, other jurisdictions apply estoppel in certain mechanics' lien situations.[1]

---

[1] Reeder Lathing Co. v. Allen, 66 Cal.2d 373, 57 Cal. Rptr. 841, 425 P.2d 785 (1967); Baxter Corp. v. Home Owners & Lenders, 86 Cal. Rptr. 854, 7 Cal. App.3d 725 (1970); P. C. Degen v. Acme Brick Co., 312 S.W.2d 194, 228 Ark. 1054 (1958); Taylor & Sons, Inc. v. Brentwood Construction Co., 56 Del. 8, 189 A.2d 414 (1963); Gulf Stream Lumber Co. v. Lathrop, 108 So.2d 55 (Fla. App. 1959); West Lumber

The elements of equitable estoppel by conduct are set forth in our cases of *Broida v. Hayashi,* 51 Haw. 493, 499, 464 P.2d 285, 289 (1970); *Molokai Ranch, Ltd. v. Morris,* 36 Haw. 219, 223 (1942); and *Peabody v. Damon,* 16 Haw. 447, 451 (1905). In *Broida v. Hayashi, supra,* we quoted the following passage from *Molokai Ranch, supra:*

> In order to [have] an estoppel by conduct, there must have been a representation or concealment of material facts, known by the party to exist, and with the intention of inducing a party, ignorant of the facts, to act upon the representations.

In this case the elements of estoppel against enforcement of the lien are present.

### I. Pacific Concrete's False Representation or Concealment of a Material Fact

Pacific Concrete never telephoned or in any other way notified the defendants of the risk posed by Aquarius' financial precariousness. The question becomes whether on the facts of this case Pacific Concrete has a *duty to speak,* as required for estoppel by *Broida v. Hayashi, supra* at 499, and by *Peabody v. Damon, supra* at 452-456. If there was such a duty, it was breached and the first element of estoppel was established.

No cases directly hold that a materialman has a duty to warn a property owner that the owner is dealing with a financially imperiled general contractor. Generally, an owner is assumed capable of exercising prudence in selecting and dealing with a general contractor. In fact, the great majority of the homeowning public is ignorant of the existence of the mechanics' lien law and thus is not alert to the risk involved if the general contractor fails to pay the subcontractor or

Co. v. White, 99 Ga.App. 169, 107 S.E.2d 906 (1959); Voorhees-Jontz Lumber Co. v. Bezek, 137 Ind. App. 382, 209 N.E.2d 380 (1965); Kennemore v. Robbins, 223 Ark. 384, 266 S.W.2d 64 (1954); Crane Co. v. Onley, 194 Md. 43, 69 A.2d 903 (C.A. Md.1949); Goodwin Tile & Brick v. DeVries, 234 Iowa 566, 13 N.W.2d 310 (1944); Detroit Graphite v. Carney, 175 Okla. 583, 53 P.2d 584 (1935).

materialman. When estoppel is found, courts generally find it arising from representations made directly to the property owner from the materialman or other lienor.[2]

California does recognize that silence may support estoppel in a mechanics' lien situation, *Reeder Lathing Co. v. Allen, supra* note 1; *Baxter Corp. v. Home Owners and Lenders, supra* note 1, and California and Arkansas recognize that the credit practices of a lienor may support an estoppel. *Reeder Lathing, supra; Degen v. Acme Brick, supra* note 1. But see *Midland Bldg. Industries v. Oldenkamp,* 122 Ind. App. 347, 103 N.E.2d 451 (1952); *Wheatley Industries v. Owens-Corning Fiberglas Co.,* 470 P.2d 986 (Okla. 1970).

Plaintiff argues that *Wheatley Industries v. Owens-Corning Fiberglas Co., supra,* compels affirmance of the judgment below. However, that case is distinguishable on the grounds that the relevant Oklahoma statute practically forecloses the applicability of estoppel by declaring in relevant part, "The risk of all payments made to the original contractor shall be upon such owner until the expiration of the ninety (90) days herein specified." 42 Okla. Stat. 1961, § 143. The Hawaii mechanic's and materialman's lien statute has no such provision.

More importantly, in both *Wheatley* and in this case the heart of the matter is the lien claimant's credit policy toward its immediate customer, but *Wheatley* does not elaborate on the exact nature and extent of the problem. In *Wheatley* the defendant asserting estoppel pointed to a 60-day delinquency in the relevant account with the materialman, a delinquency

---

[2] Some courts find estoppel when the party asserting the lien has made direct representations to the owner either that the material had been paid for, West Lumber Co. v. White, *supra* note 1; or that the owner need not hold back any money, Kennemore v. Robbins, *supra* note 1; or that the debt to the lienor was limited to a certain amount, Goodwin Tile & Brick Co. v. DeVries, *supra* note 1; or that the general contractor's credit was good, Crane v. Onley, *supra* note 1. Another type of direct representation to owners that has produced estoppels is the false use of lien releases, waivers, or payment receipts. State v. Wesley Construction Co., 316 F.Supp. 490 (S.D. Fla. 1970); Taylor & Sons v. Brentwood Construction, *supra* note 1.

which lengthened to six months after the material was delivered to the job site, and a bad check. The opinion does not reveal the sizes of the delinquency and the volume of business on the account, and a small delinquency on a large account of a large firm with long established good credit differs from a large delinquency on a small account of a small, new company with little credit history. It is more appropriate to approach each case individually, especially given that estoppel calls for the balancing of specific equities.

In this case, Pacific Concrete had two early warnings about possible payment problems by Aquarius. Pacific Concrete also knew of Aquarius' default on its September payment and starting in February knew of complete defaults on bills starting in November, defaults which were to extend to the December 1971 and January 1972 billings. Furthermore, by early March 1972 at the latest, Pacific Concrete was aware of the state tax lien against Aquarius. Pacific Concrete's concern with the situation is clear from its action in putting Aquarius on a C.O.D. basis. Yet while acting to protect its own interests by C.O.D. transactions, Pacific Concrete did nothing to warn homeowners of Aquarius' delinquency and thus did nothing to insure payment on the delinquent accounts for November and December 1971 and January 1972, beyond relying on the mechanics' lien statute. These events warning Pacific Concrete of the danger posed by Aquarius all occurred *before* the Wetzels finished paying for their pool in late March.

This situation is more egregious than the *Wheatley* case, and under the facts in this case the materialman, Pacific Concrete, had a duty to warn the Wetzels, owners of the property in which the material was used.

We believe that it is the better policy to impose such a duty. The plight of the homeowner is well recognized. Nock, *The "Forgotten Man" of Mechanics' Lien Laws — The Homeowner*, 16 Hastings L.J. 198 (Nov. 1964); Comment, *Mechanics' Liens — Potential Pitfall for the Homeowner*, 62 Ky. L.J. 278 (1973-74); *Mechanics' Lien Liability: A Pandora's Box for Unwary Owners*, 3 Willamette L.J. 93

(1964-65). At the very best, the homeowning public should be alerted to the risks of liens when it contracts for construction, and if materialmen tighten credit practices and drive out the more financially unsound contractors, the benefit to the homeowner from greater protection outweighs the harm of decreased business opportunity. Because materialmen are generally business concerns with the ability to judge credit and to take care of their own interests, and because they are in the best position to avert the type of problem raised in this case, it is appropriate for them to bear the duty to warn.

## II. Pacific Concrete's Intentions or Expectation of Inducing Reliance

To satisfy this requirement fraudulent intent is not necessary: negligence suffices. *Peabody v. Damon, supra,* 16 Haw. 447, 452 (1905). Having already found a duty to speak, above, we find negligence in Pacific Concrete's total failure to warn the Wetzels of Aquarius' financial shakiness.

## III. Pacific Concrete's Actual or Constructive Knowledge of the Facts

Our discussion of the facts invoking the duty to speak, above, also indicates that Pacific Concrete had ample knowledge of Aquarius' position. In this regard we note that the notice of the state tax lien was published in the February 14, 1972 issue of Pacific Business News, a periodical to which Pacific Concrete subscribed at the time.

## IV. The Wetzels' Lack of Knowledge of The Facts

Mr. Wetzel admitted ignorance of the mechanics' lien law. Given that a materialman's lien arises as a matter of statute and not from privity of contract, the owner is "conclusively presumed to have so contracted with reference to the law and to have voluntarily subjected his property to the rights thus given to materialmen and contractors." *Hackfeld v. Hilo R.R.*, 14 Haw. 448, 451 (1902). However, while

ignorance of the law is no bar to the existence of the lien, such ignorance by the consumer is relevant to estoppel against enforcement of the lien, and under the circumstances here should not preclude the grant of relief to the Wetzels.

### V. The Wetzels' Reliance in Good Faith on the Representation Created by Pacific Concrete's Silence

It is clear from the record that Mr. Wetzel presumed that his dealings with Aquarius were regular, as consumers typically assume when they deal with a business. Aquarius built the pool and the Wetzels paid the money. Without any warning of the possibility of a lien and of double payment for materials, most consumers would assume the transaction was proper.

### VI. The Injury Suffered by the Wetzels as a Consequence of their Reliance on the Representation

The injury is obvious. The Wetzels face the prospect of having to pay twice for certain materials used in building their pool.

We hold that Pacific Concrete and its assignee, Reliable Collection Agency, are estopped from enforcing the mechanics' lien involved in this case against the Wetzels.

On appeal defendants Wetzels raised other arguments against the judgement below, including an attack on the constitutionality of Hawaii's mechanic's lien law.[3] Our discussion of estoppel means we need not reach these other issues.

We reverse the judgment of the trial court.

*Jack C. Morse (Chuck & Fujiyama* of counsel), for defendants-appellants.

*Daniel G. Heely (Chee Hashimoto Lee & Oshiro* of counsel), for plaintiff-appellee.

---

[3] Compare HRS § 507-43 before and after amendment by Act 113, S.L.H. 1974.