UNION BUILDING MATERIALS CORP., Plaintiff-Appellant, Cross-Appellee, *v.* THE KAKAAKO CORPORATION and PARTNERSHIP PACIFIC BANK, N.V., Defendants-Appellees, Cross-Appellants

NO. 9030

(CIVIL NO. 55626)

APRIL 10, 1984

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY HEEN, J.

Plaintiff, appellant-cross appellee, Union Building Materials Corp. (Union) and defendants, appellees-cross appellants, The Kakaako Corporation and Partnership Pacific Bank N.V. (hereafter Kakaako and Pacific, or collectively Defendants where appropriate) have appealed from the declaratory judgment of the trial court. We affirm the trial court's holding that the sublease between the parties is a valid sublease, but reverse its holding that the sublease is for a term of years.

On September 7, 1978, Union sued Kakaako for damages alleging that Kakaako had breached the terms of a sublease between Kakaako, as sublessor, and Union, as sublessee, and had committed certain tortious acts. Pacific was joined later as a co-defendant. Kakaako and Pacific denied Union's allegations. Kakaako counterclaimed for damages and for a declaratory judgment "decreeing and determining the date and conditions upon which [the sublease] will terminate."

Jury trial on the parties' monetary claims and a concurrent bench trial on Kakaako's declaratory relief counterclaim began on September 21, 1981. The jury's verdict awarding money damages to Union was entered on October 2, 1981, and on December 2, 1981, the court entered its findings of fact, conclusions of law and declaratory judgment on Kakaako's counterclaim. In response to Union's motion, the court filed amended findings of fact and conclusions of law and declaratory judgment on August 25, 1982. Union filed its notice of appeal on September 24, 1982, and Defendants filed their notice of cross-appeal on October 8, 1982.[1] The

---

[1] Pacific counterclaimed only for damages and did not join in Kakaako's counterclaim for declaratory relief. There may be some question as to Pacific's standing to appeal the judgment on the counterclaim. However, as will be seen, Pacific transferred the sublease to Kakaako and is at least arguably affected by the court's construction of the sublease.

parties have not appealed from the jury verdict.

The appeals will be discussed seriatim.

## FACTS

The sublease was originally entered into by Mainline Harbor Properties (MHP), as sublessor, and Union, as sublessee, effective November 25, 1974. Pacific acquired the sublease in June 1976, upon MHP's default on its mortgage to Pacific, and transferred the sublease to Kakaako in June 1977. The sublease demised to Union approximately 100,525 square feet of the property in downtown Honolulu known as the "Iron Works" property owned by the B. P. Bishop Estate. The total area of the property exceeds 9 acres.

The dispute involves the interpretation of the following provision of the sublease:

2. *TERM.* The term of this sublease shall commence at 8:00 a.m. on November 25, 1974 and shall continue, thereafter, until the premises occupied by the sublessee under this sublease shall be required by MHP or its successors and assigns for major redevelopment of five million dollars ($5,000,000.00) or more by the sublessor. In order to cancel said sublease, the sublessor shall be required to give the sublessee one hundred twenty (120) days advance written notice prior to the starting date of physical redevelopment; which date shall be the corresponding termination date of this sublease. The sublessee may cancel this sublease at any time by giving the sublessor one hundred twenty (120) days advance written notice by registered mail of sublessee's intention to terminate the sublease.

The court's amended findings of fact, conclusions of law and declaratory judgment are as follows:

1. Sublease No. 19, the subject matter of this litigation, has sufficient definiteness to constitute a sublease for a term of years. The provisions under paragraph 3 *Rent* reflect that the parties intended that the sublease run for a period of years. There is also a definite outside termination date as the sublease must terminate upon expiration of the Bishop Estate Master Lease.

2. Paragraph 2 *Term* provides for an earlier termination date upon fulfillment of certain conditions that were bargained

for and agreed upon between the parties. One condition is that the premises occupied by Plaintiff under the Sublease be required by Defendant or its successors as a part of a major redevelopment project of $5,000,000.00 or more.

3. The evidence clearly reflects that the parties intended that $5,000,000.00 be expended on a redevelopment project which would include the premises occupied by Plaintiff under Sublease No. 19. Furthermore, Defendants went to great lengths at the trial to show that considerably more than $5,000,000.00 will be spent on a project which includes Plaintiff's premises as part of the proposed major redevelopment.

4. Paragraph 2 *Term* of Sublease No. 19 also provides:

". . . In order to cancel said sublease the sublessor shall be required to give the advance written notice prior to the starting date of physical redevelopment; which date shall be the corresponding termination date of the sublease. . . ."

The evidence also reflects that the parties fully intended that Plaintiff be permitted to remain upon the premises until the start of physical redevelopment and that this would be triggered by commencement of actual demolition of improvements existing on the subject premises.

5. This event is capable of ascertainment and is not so ambiguous or vague as to render the provision meaningless. Furthermore, this language was put into final form by Defendant-landlord and it should not be permitted to use the same to defeat both the operation of the contract or the expressed intent of the parties.

### CONCLUSIONS

1. Sublease No. 19 is a valid sublease for a term of years.

2. Said Sublease will terminate upon expiration of the Bishop Estate Master Lease and may be terminated earlier pursuant to provisions in paragraph 2 *Term* of said Sublease.

3. Paragraph 2 *Term* requires that the sublessor expend at least $5,000,000.00 on a major redevelopment project which includes Plaintiff's demised premise.

4. Paragraph 2 *Term* further requires that the sublessor give Plaintiff 120 days advance written notice prior to the starting

date of physical redevelopment, that is, the commencement date of actual demolition of improvements existing on the subject property, which date shall be the corresponding termination date of the sublease.

## JUDGMENT

IT IS HEREBY ORDERED, ADJUDGED, DECREED AND DECLARED that Sublease No. 19, dated November 25, 1974, concerning real property described therein and located at the area commonly known as "The Ironworks", is a valid sublease for a term for years and may be terminated prior to expiration of the master lease in accordance with the provisions of paragraph 2 *Term* of said Sublease which requires (a) that the sublessor expend at least $5,000,000.00 on a major redevelopment project which includes Plaintiff's demised premises and (b) that the sublessor give Plaintiff 120 days advance written notice prior to the starting date of physical redevelopment, that is, the commencement date of actual demolition of improvements existing on the subject property, which date shall be the corresponding termination date of the Sublease.

## UNION'S APPEAL

Union argues that under paragraph 2, Kakaako only has the right to terminate the sublease if it embarks upon a redevelopment project calling for the expenditure of $5,000,000 on the subleased premises alone; therefore, the trial court's finding that "[T]he parties intended that $5,000,000 be expended on a [redevelopment] project which would include the [subleased] premises[.]," was clearly erroneous.

For the reasons set forth below, we affirm that finding.

### (1)

Union's opening brief does not state any points on appeal or quote any findings or conclusions urged as error, or include a statement of the particulars wherein the findings or conclusions are alleged to be erroneous, all in violation of Rule 3(b)(5), Rules of the

Supreme Court (RSC). In those circumstances, the appellate court may deny an appeal. *Johnson v. Robert's Hawaii Tour, Inc.,* 4 Haw. App. 175, 664 P.2d 262 (1983).

(2)

Union has not included in the record on appeal enough of the evidence taken below to sustain its burden of convincing us that the trial court's finding stated above was clearly erroneous.

The burden is upon appellant in an appeal to show error by reference to matters in the record, and he has the responsibility of providing an adequate transcript. *State v. Goers,* 61 Haw. 198, 600 P.2d 1142 (1979); 9 MOORE'S FEDERAL PRACTICE ¶ 210.05[1] (2d ed. 1983). Moreover, if the appellant wishes to urge that a finding or conclusion is unsupported by the evidence, he must include a transcript of all the evidence relevant to such finding or conclusion. *Id. See Herron v. Rozelle,* 480 F.2d 282 (10th Cir. 1973). In *Valley Stream Flooring Corp. v. Green Manor Construction Co.,* 336 F.2d 6 (1st Cir. 1964), the court noted that:

> Appellants have culled from the transcript of the trial only that part of the testimony favorable to their case and have ignored all else, giving this court a distorted picture of what transpired below. The record . . . does not contain a good deal of evidence relied upon by the district court in formulating its opinion, an opinion which we are asked to reverse as unsupported in law and evidence. . . .

*Id.* at 7. An appellant may not pick and choose what he would like to see, but he has the burden to designate all the evidence, good and bad, material to the point he wishes to raise. *Chernack v. Radlo,* 331 F.2d 170 (1st Cir. 1964).

The law is clear in this jurisdiction that the appellant has the burden of furnishing the appellate court with a sufficient record to positively show the alleged error. *State v. Hawaiian Dredging Co.,* 48 Haw. 152, 397 P.2d 593 (1964); *Marn v. Reynolds,* 44 Haw. 655, 361 P.2d 383 (1961); *Johnson v. Robert's Hawaii Tour, Inc., supra;* *Hawaiian Trust Co. v. Cowan,* 4 Haw. App. 166, 663 P.2d 634 (1983). An appellant must include in the record all of the evidence on which the lower court might have based its findings and if this is

not done, the lower court must be affirmed. *See Watson v. Button,* 235 F.2d 235 (9th Cir. 1956).

Union designated as the record on appeal the testimony of Keith Kranz (Kranz), its president, and Robert Anderson (Anderson), a real estate leasing agent who represented Robert Holman (Holman), MHP's principal, and negotiated the terms of the sublease. Holman also testified at the trial, but Union did not designate his testimony as part of the record. Union's assertion that the testimony of Anderson and Kranz was undisputed and that none of Holman's testimony was pertinent or relevant is not "part of the record" and cannot be relied upon by this court.

Defendants argue that Union has violated Rule 75(b), Hawaii Rules of Civil Procedure (HRCP) (1980), because it did not serve on Defendants a statement of the issues it intended to present on appeal and did not include all of the evidence relevant to the finding being challenged.[2] Defendants state that, although they knew that Union was challenging the court's finding as to the expenditure of the $5,000,000, they were not aware that Union's brief would rely on the argument that the testimony of Anderson and Kranz was undisputed.

In its reply brief, Union states that Holman's testimony was not designated for the record because "[c]ounsel for [Union] could not find anything in their notes or their memory for that matter, reflecting pertinent testimony from him on this issue," and that, if Defendants' counsel contended otherwise, they merely had to procure either a transcript of Holman's testimony or an order from the circuit court requiring Union to do so.

It is true that the fourth sentence of Rule 75(b), HRCP, places

---

[2] Rule 75(b), HRCP, reads in pertinent part as follows:

Unless the entire transcript is to be included, the appellant shall [within 10 days after filing the notice of appeal], file and serve on the appellee a description of the parts of the transcript which he intends to include in the record and a statement of the issues he intends to present on the appeal. If an appellant intends to urge an [sic] appeal that a finding or conclusion is unsupported by the evidence, or contrary to the evidence, he shall include in the record a transcript of all evidence relevant to such finding or conclusion. If the appellee deems a transcript of other parts of the proceedings to be necessary he shall, within 10 days after service of the statement of issues by the appellant, order such parts from the reporter or procure an order from the circuit court requiring the appellant to do so.

some responsibility on the appellee for providing an adequate transcript. But the real burden is upon the appellant since it must show error by reference to matters in the record. 9 Moore's, *supra.* Moreover, appellee's burden under Rule 75(b) to order other parts of the transcript only arises when appellant has served its statement of issues to be presented on appeal, which was not done in this case.

Union's failure to designate Holman's testimony as part of the record is fatal to its appeal. The state of the appellate record is such that all of the evidence presented to the trial court is not presented here and we have no way of knowing if the evidence omitted is relevant. Therefore, we cannot say that the court's findings are not supported by substantial evidence and are clearly erroneous.

### DEFENDANTS' APPEAL

Defendants assert that the lower court's findings of fact No. 1, 2, 4 and 5 are clearly erroneous and, therefore, conclusions of law No. 2 and 4 are incorrect.

The substance of the lower court's decision was that Union's sublease was coterminous with Kakaako's master lease, but subject to earlier termination in accordance with the provisions of paragraph "2. *Term.*" Defendants argue that the sublease provides for an indefinite term and is, therefore, as a matter of law, a month-to-month tenancy under the provisions of Hawaii Revised Statutes (HRS) § 666-2 (1976).[3]

---

[3] HRS § 666-2 reads as follows:

Tenancy from month to month, etc.; termination, extension. Notwithstanding other provisions of law to the contrary, when real property is rented for an indefinite time with monthly or other periodic rent reserved, such holding shall be construed to be a tenancy from month to month, or from period to period on which rent is payable, and shall only be terminated by written notice to vacate or of intention to vacate given twenty-five days or more preceding the end of any month or period by either landlord or tenant to the other; provided, that when any tenant, without such notice having been given by either landlord or tenant to the other, retains possession of rented premises for any period of time after the expiration of such month or period, a valid and enforceable tenancy shall be thereby created for an additional month or period, as the case may be; provided, further, that when a tenant under such a tenancy fails to pay the rent reserved at the time agreed upon, the landlord may terminate the tenancy by giving to the tenant a written notice to vacate of not less than five days.

We find nothing ambiguous about the wording of paragraph 2 of the sublease. Therefore, its construction was a matter for the court. *Bishop Trust Co. v. Central Union Church of Honolulu,* 3 Haw. App. 624, 656 P.2d 1353 (1983). We are not bound by the trial court's construction but must make our own independent determination. *American Security Bank v. Read Realty, Inc.,* 1 Haw. App. 161, 616 P.2d 237 (1980).

Leases must be construed as a whole so as to give effect to the intention of the parties, *Flint v. MacKenzie,* 53 Haw. 626, 500 P.2d 556 (1972), and so as to give force and effect to all of the provisions. *See* 49 Am. Jur. 2d *Landlord and Tenant* § 141 (1970). The language is to be reasonably construed so as not to give one of the parties an unreasonable advantage over the other. *Id. See Broida v. Hayashi,* 51 Haw. 493, 464 P.2d 285 (1970).

We hold that the trial court erred in holding that the sublease was for a term of years. The language of paragraph 2 indicates clearly that the parties intended and entered into a tenancy not for years or for a definite term but only until such time as the sublessor shall require the premises in its redevelopment of the property. There is nothing in the wording of the paragraph or the sublease as a whole to indicate that the parties intended a definite term.

The trial court referred to the rental provision of paragraph 3 of the sublease as indicating the parties' intent to create a tenancy for years. Paragraph 3 reads as follows:

3. *Rent.* The sublessee shall pay to the sublessor on or before the first day of each month, at sublessor's office or such other place in Honolulu as may be designated by sublessor, monthly base rent for the demised space as follows:

| *LEASE TERM* | *MONTHLY BASE RENT* |
|---|---|
| *Period* | |
| A. For the period 11.25.74-5.31.75 | $5,600.00 |
| B. For the period 6.1.75-11.24.77 | $6,271.02 |
| C. For the period 11.25.77-11.24.80 | $7,170.00 |
| D. For the period 11.25.80-11.24.83 | $8,600.00 |

E. For the remaining term of this lease, the monthly rental to be paid for and during each year of each successive three (3) year period shall be such sum equal to the base rent of the previous three (3) year period plus a percentage of such base

rent equal to the annual percentage rise in the consumer price index for each year of said three (3) year period compounded annually. In no event shall the minimum rental period be less than that calculated for the previous three (3) year period. In addition to the above monthly rents, the sublessee shall pay to the sublessor all Hawaii Gross Excise taxes applicable to the above rents. Sublessee shall pay said rent and gross excise taxes to the sublessor or its designated agents without any deduction and without any notice or demand.

The trial court's construction of paragraph 3 created ambiguity where there was clarity.

The more reasonable construction of paragraph 3 is that it merely establishes a schedule of future monthly rental payments, obviating renegotiation. The fact that the schedule of monthly rents is set up in biennial and triennial periods, or that it establishes a formula for adjusting the rents on the basis of the consumer price index for the "remaining term of this lease" does not detract from the clarity of paragraph 2.

The salient feature of the sublease is that its term extends only to that particular time when Kakaako decides to proceed with its redevelopment and gives the requisite notice. It is obvious from the tenor of the entire document that the parties negotiated its terms with the redevelopment project in mind. The schedule of monthly rents in paragraph 3 recognizes that Kakaako's right to cancel or terminate might not be exercised for a good many years. But that does not make the term definite or one for a prescribed number of years. If the parties had intended a term for years, it is more reasonable to suppose that they would have said so explicitly rather than circuitously via paragraph 3.

It is axiomatic that a lease for years must have a definite and certain time at which it begins and ends. Where the end of the term is indefinite and uncertain, the agreement does not create a valid lease for a term of years. Thompson, *Commentaries On The Modern Law Of Real Property*, § 1088 (1980). A lease is for a fixed period of time when it specifies its beginning date and its termination date as calendar dates. A lease is for a computable period of time when it specifies a formula for determining the beginning and termination dates; and the application of such formula, as of the date of the

agreement, will produce a calendar date for the beginning and termination of the lease. Restatement (Second) of Property § 1.4 comment a (1977). The sublease provides neither a firm termination date nor a formula for computing one.

It follows from the above that the trial court's finding that the sublease was for a definite term because it would expire upon expiration of the master lease is in error. Moreover, its holding that the sublease was drafted by Kakaako's predecessor in interest and therefore the ambiguous language should be construed against it is irrelevant, because the sublease language is unambiguous. *Broida v. Hayashi, supra.*

The intent of the parties is clear from the language and our interpretation effectuates it and gives force and effect to the terms of both paragraphs 2 and 3. Union has a written sublease setting forth its rights, duties and obligations, and prescribing its future rentals, but the entire sublease is subject to Kakaako's paramount right to redevelop the property and to cancel or terminate the sublease in accordance with its terms. Consequently, we hold that the sublease is for an indefinite term with rents reserved on a monthly basis and is, under HRS § 666-2, a tenancy from month to month.

We further hold, however, that the trial court was correct in holding that the notice and termination provisions of paragraph 2 govern the manner in which Kakaako can terminate the sublease. By its terms the sublease created a month-to-month tenancy terminable upon the occurrence of a condition subsequent and 120 days notice. *See* Restatement (Second) of Property § 1.7 comment e (1977). Section 666-2, HRS, establishes only a minimum notice period. There is nothing in § 666-2 nor in its legislative history prohibiting such an agreement. Sen. Stand. Com. Rep. No. 229, in 1929 Senate Journal at 729. *See also* 1 American Law of Property § 3.90 (1952). Our duty is to give effect to their agreement.

Thus, whenever Kakaako (or its successors and assigns) is ready to redevelop all or part of the premises covered by its master lease, in a project which includes the subleased premises and calls for an expenditure of $5,000,000.00 or more, it may terminate Union's sublease by giving Union not less than 120 days written notice prior to the commencement of physical redevelopment.

## CONCLUSION

That portion of the judgment holding that the sublease created a term of years is reversed. The matter is remanded to the court below with instructions to enter judgment declaring that the sublease is a month-to-month tenancy subject to termination as provided above. In all other respects, the judgment appealed from is affirmed.

*W. Patrick O'Connor (Barlow & O'Connor* of counsel) for plaintiff-appellant, cross-appellee.

*Daral G. Conklin (Chad P. Love* with him on the briefs; *Conklin, Schneider & Love* of counsel) for defendants-appellees, cross-appellants.